LADNER *v.* ROAD PROTECTION COMMISSION *et al.*[*]

(Division B.   April 16, 1928.)

[116 So. 602.   No. 27089.]

*Corpus Juris-Cyc. References: Eminent Domain, 20CJ, p. 537, n. 54; Highways, 29CJ, p. 584, n. 75; p. 587, n. 23.

*Gardner, Brown & Morse,* for appellant.

420

*R. L. Genin, E. J. Gex* and *Gex & Russell,* for appellee.

ETHRIDGE, P. J. The appellant was complainant in the court below, and filed her bill, as a citizen and taxpayer of the county, the owner of real estate in the said

county, and on behalf of herself and other taxpayers, against the road protection commission and the board of supervisors of said county, alleging that, under chapter 319, Laws of 1924, the board of supervisors passed an order, spread upon its minutes, that it was necessary that a system of road protection be constructed in said county to protect certain of its highways, and that a copy of said order was duly certified to the Governor of the state, who thereupon appointed certain named persons as road protection commissioners under the said act; that the said persons so appointed qualified as such, and that the road protection commission was duly organized; that after the organization of the said road protection commission they employed a civil engineer to make a survey, plans, specifications, and estimate of the costs of said road protection work, which the commission found and determined was necessary, and that the employment of the said engineer was approved by the board of supervisors; that thereafter the said engineer did, in due course, make a survey of the road protection work found to be necessary, and made plans and specifications and estimate of the costs of the construction thereof, which report, or estimate, was duly approved by the road protection commission; that thereafter the same was submitted to the board of supervisors, with the said plans, specifications, and estimate, and was by the board of supervisors duly approved; that after the same had been adopted by the two official bodies, and the estimate of the costs of construction of road protection to certain named public highways approved by them, the question of issuing bonds for the work specified was submitted to a vote of the qualified electors of the county, and carried; that the board of supervisors issued and sold bonds for the purpose of providing funds with which to construct the road protection to the said public highways in the county, as originally planned and contemplated by the road protection commission; that there-

after, after due advertisement for bids, contract was awarded in accordance with the specifications filed, on the 14th day of June, 1927; that the contractor executed bond for the faithful performance of, and began the execution of, his contract; that thereafter the road protection commission and board of supervisors decided to build and construct, and pay for out of the funds provided by the sale of the bonds hereinabove referred to, a concrete highway, or pavement, adjacent to or adjoining the sea wall, or road protection; that the specifications therefor were filed with the road protection commission, and on the 14th day of July, 1927, the road protection commission passed a resolution approving the plans and specifications for the concrete road authorized; that the said order also directed that an advertisement be inserted, asking for bids to be received and contract let by the said commission and the board of supervisors on November 8, 1927.

It is alleged that the action of said commission in approving the specifications for the construction of the concrete road, and the action of the commission directing that bids be received and contract let for such construction, had been approved by the board of supervisors of the county, and that it was the intention of the board of supervisors to enter into a contract for the said concrete road, or pavement, to the lowest bidder, on November 8, 1927. It is alleged that payment for the construction of the public highway, or road paving, out of the road protection funds of said county, as planned by the commission and board of supervisors, is not authorized by said chapter 319, Laws of 1924, or by any other law of the state of Mississippi; that said act only authorizes the use of the said road protection fund for the purpose of protecting any public road, street, or highway along the beach or shore of any body of tidewater, where such road, street, or highway may be exposed to, subject to, or in danger of damage by water driven against the shore

by storms and that said act does not authorize the said commission to construct highways made of concrete or other material, but limits and restricts the commission and the board of supervisors, in the construction of protection by sea wall or other means, to designated class of existing public roads; that the act of the legislature did not contemplate that the road protection commission or the board of supervisors of any of the tidewater counties should have authority to issue bonds of the respective counties for the purpose of building and constructing highways, but that bonds should be issued for the purpose of constructing the necessary protection, by sea wall or otherwise, to the public roads of the several counties located along the tidewater.

It is further alleged that, while the construction of a concrete road or highway adjacent to the sea wall or road protection now under construction may, to some extent, strengthen or make more secure the said sea wall or road protection, nevertheless no authority exists in the said chapter 319 of the Laws of Mississippi to construct roadways, or to construct roads or paved highways, but that the authority and power of the road protection commission is restricted and limited to the construction of road protection; that the electors of the county voted to issue bonds, not to build highways, but to provide funds to protect highways constructed along the seashore, or sufficiently near to be subjected to damage by tidal waves or storms. It is further alleged that, unless injunction issue, the road protection commission and board of supervisors will wrongfully and unlawfully appropriate said road protection funds of said county in constructing concrete roads or highways adjacent to or adjoining the sea wall or road protection now being constructed by the county; that the complainant cannot prevent the said wrongful diversion of the road protection fund, as planned and contemplated by said county, by any action of law, such as complainant or any other taxpayer may

institute, and that the only remedy to prevent the said plans from being carried out is by injunction; that, if the said defendants are not restrained and enjoined from carrying out their wrongful and unlawful plans and purposes, irreparable injury will be sustained by him and by other taxpayers of the said county. And the bill prays for such an injunction to issue, to prevent the construction of a concrete apron or road or public highway adjacent to the sea wall or road protection now being constructed in said county, and to enjoin and restrain the said boards from entering into such contract to pay therefor out of the road protection funds of said county.

The answer of the defendants admitted their purpose of constructing the apron, and the use of the apron as a roadway in connection with the road protection wall, but denied that they were not authorized so to do, and averred that the same was necessary for the protection of the road and of the wall erected; that they were constructing the same as an apron, and as a part of the road protection wall, because it was the best means of preventing the washing away of the road and wall, and the most effective method of constructing a road protection. They admitted their intention to use the same as a road or highway, and that it was to be constructed for a width of forty feet from the wall and from five to six inches in thickness. They denied that they were not authorized by Laws of 1924 to construct same—contended that they had authority under the said act to construct a highway, if necessary, for that purpose.

The engineer, Billingsley, advised the road protection commission of Hancock county that such an apron was a feasible and necessary protection to the concrete wall; that it was, in fact, as much a part of such sea wall as the piles that protected it. He submitted photographs of sea walls of similar nature, taken at Pensacola, Fla., showing the wrecking of same by means of washing the earth which supported the wall, by water cutting the

support away from it, and urged the plan of protecting the wall by means of the apron. The engineer also testified that the system advised was the best and most effective method of road protection; that he had had experience in such matters, and from his study and investigation considered it the safest and most economical and safe protection to roads against such waters; that he had observed, in all parts of this country and in South America, the action of storms upon beach coast lines; that he had observed practically all forms of wall protection designed to arrest the action of waves and check the rush to the coast line under storm conditions; that such storm conditions occur in the most devastating form when at high tide; that high tide generally develop high winds, and the winds blow the water from the land side; that the effect of the waves is to arrest the onrush of the water, to prevent erosion of the beach line; that under storm conditions it is impossible to arrest the onrush of the water; that a great deal of water is thrown into the air under high wind velocity, and that this water is thrown on the area immediately back of the wall, and, if this area is not protected with what is termed a roof, it will be dugout, scoured out, leaving an excavated area back of the wall, and that this, in turn, will endanger the stability of the wall itself; that it was with the knowledge of these facts that he designed a construction which, instead of creating a large area of fill, would reduce the area, so that there would be a small amount of roof to build on the fill.

The chancellor upheld the action of the road commission and the board of supervisors in directing the construction of said apron or roadway, and dismissed the bill, from which decree this appeal is directed.

In section 1 of chapter 319, Laws of 1924, it is provided that:

"Whenever any public road, street or highway shall extend along the beach or shore of any body of tidewater,

and such road, street or highway, or any part thereof, shall be exposed to, subject to, or in danger of, damage by water driven against the shore by storms, and is not protected in any sea wall district, the boards of supervisors shall have the power, and it is hereby made their duty, to erect and maintain all necessary sea walls, breakwaters, bulkheads, sloping beach, or other necessary device to protect and preserve such roads, streets, and highways, and for that purpose, and for the purpose of construction or improving such highway, may issue the bonds of the county therefor.''

In section 2 of the act it is provided that:

''The several boards of supervisors are hereby clothed with full power to construct or improve, or to aid in the construction or improvement in case of national or state highways, all such roads and streets, and in such cases the law now in force governing the width of roads shall not apply, but such roads may be built to such reasonable width as the boards of supervisors and other proper authorities may determine.''

In section 3 of the act it is provided that:

''For the purpose of this act, the several boards of supervisors are hereby clothed with the power and authority, and it is made their duty, to exercise the right of eminent domain in order to procure the right of way for such roads, streets, highways, sea walls, breakwaters, bulkheads, sloping beach and such other devices as may be adopted for the protection of such highways, and shall have the power to pass all necessary ordinances for the preservation and protection of any such road, sea wall, sloping beach or other device constructed under this act, and the violation of such ordinances shall constitute, and be punished as, a misdemeanor.''

In section 5 of the act it is provided that:

''Whenever it shall become necessary to construct, widen or protect any highway under the provisions of this act, the road protection commission shall make publica-

tion for thirty days in some newspaper published in the county wherein such improvements are made, setting forth the commencement and termination, with a general outline of the nature and extent thereof. When any owner of land or other person shall claim compensation for land taken for such purpose, or for damage sustained by the construction, widening, improvement or protection of such road or highway, he shall petition the board of supervisors in writing within thirty days after the expiration of the time provided for such publication, setting forth the nature and character of the damages claimed, whereupon the board shall on five days' notice to petitioner, go on the premises and assess the damages sustained by him. The finding of the board shall be in writing, signed by the members agreeing to it, and must be entered on the minutes at the next meeting, but if the damages sustained and claimed to be less than the cost of assessing, the board may allow the same without inquiry.''

Appeal proceedings are provided in section 6. Sections 8, 9, and 10 provide for funds to be used in such work.

It will be seen, from a careful reading of the statute, that the boards of supervisors were given power both to construct roads and road protection from such funds. It is quite clear, from a consideration of the statute in connection with what was done, as shown by the record, that the board of supervisors and the road protection commission had authority to do what was done. The Constitution (section 170), conferring full jurisdiction of roads, ferries and bridges upon the boards of supervisors, is not violated by the statute, because the board must consent to the improvement and to the plans and specifications therefor, and must, in fact, initiate the proceedings before the governor appoints a road protection commission.

The scheme provided, as shown by the testimony of the engineer, is one of the most effective to accomplish the legislative purpose. The apron proposed is to strengthen the road protection wall, and to prevent it from being undermined by the washing away of its rear support during storms; and the fact that it may also be used as a roadway does not militate against the power of the road commission and board of supervisors to construct it as a reasonable necessity for protecting the road protection wall proper.

Under the plans devised, the protection wall is not to be built so high as would be necessary, were not the apron attachment given to protect it. The board and road protection commission are expressly authorized to use the revenue provided for the purposes here involved. It is not necessary for the board of supervisors and the road protection commission to follow literally the roadbed as originally laid out. The statute clearly provides and intends that the proper exercise of discretion may be used, when it is necessary to construct a new roadbed, rather than follow the tortuous meanderings of an existing road.

The plan seems to be perfectly consistent with the statute, and the chancellor's finding, sustaining the action of the board of supervisors and road protection commission, will be upheld. We do not think the criticism made by appellant is well founded. The pleadings do not challenge the right of complainant to bring suit as a taxpayer, and the conclusion reached makes it unnecessary for us to determine the right of a mere taxpayer, in the absence of the proper showing of applying to the proper authorities representing the public, to bring the suit as affecting the public interest. We say this, so that entertaining this suit, and deciding the questions, will not be held to be a precedent authorizing a mere taxpayer to challenge the expenditure of funds already collected by the public authorities.

*Affirmed.*