# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-IA-01513-SCT

*THE CARL RONNIE DARICEK LIVING TRUST*

*v.*

*HANCOCK COUNTY, MISSISSIPPI, ACTING BY
AND THROUGH ITS BOARD OF SUPERVISORS
AND THE HANCOCK COUNTY ROAD
PROTECTION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/2009 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VIRGIL G. GILLESPIE |
| ATTORNEY FOR APPELLEE: | KARL CRAWFORD HIGHTOWER |
| NATURE OF THE CASE: | CIVIL - CONSTITUTIONALITY OF STATUTE, EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED AND REMANDED - 05/13/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH
## NO. 2009-IA-01514-SCT

*ERNEST BECKEMEYER, III*

*v.*

*HANCOCK COUNTY, MISSISSIPPI, ACTING BY
AND THROUGH ITS BOARD OF SUPERVISORS
AND THE HANCOCK COUNTY ROAD
PROTECTION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/2009 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VIRGIL G. GILLESPIE |
| ATTORNEY FOR APPELLEE: | KARL CRAWFORD HIGHTOWER |

| NATURE OF THE CASE: | CIVIL - CONSTITUTIONALITY OF STATUTE, EMINENT DOMAIN |
|---|---|
| DISPOSITION: | AFFIRMED AND REMANDED - 05/13/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**CONSOLIDATED WITH**
**NO. 2009-IA-01515-SCT**

*LISA K. FITCH, SANDRA K. GOODWIN AND*
*ANN K. ENGLEHORN*

*v.*

*HANCOCK COUNTY, MISSISSIPPI, ACTING BY*
*AND THROUGH ITS BOARD OF SUPERVISORS*
*AND THE HANCOCK COUNTY ROAD*
*PROTECTION COMMISSION*

| DATE OF JUDGMENT: | 08/31/2009 |
|---|---|
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VIRGIL G. GILLESPIE |
| ATTORNEY FOR APPELLEE: | KARL CRAWFORD HIGHTOWER |
| NATURE OF THE CASE: | CIVIL - CONSTITUTIONALITY OF STATUTE, EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED AND REMANDED - 05/13/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     The three consolidated cases are nearly identical.[1]   Landowners assert in this interlocutory appeal that the statute used by Hancock County to condemn their property for a temporary construction easement is unconstitutional, or has been repealed and/or

---

[1]The cases differ only in the names of the appellants, the locations of the properties, and the sizes of the easements sought.

superseded by a subsequent statute. The landowners seek a remand to the Hancock County Board of Supervisors to begin proceedings "anew." We affirm the decision of the circuit court and remand the matter to that court for a jury trial, if requested by the landowners.

## FACTS AND PROCEDURAL HISTORY

¶2.    Hurricane Katrina severely damaged the seawall protecting Beach Boulevard in downtown Bay Saint Louis. Only battered, intermittent sections remain. The U.S. Corps of Engineers ("Corps") offered to rebuild the seawall for Hancock County using federal funds, at an estimated cost of $33,000,000. The planned seawall will be slightly seaward from the former one and will be located on land already owned by the State (public-trust tidelands). *See* ***Parks v. Simpson***, 242 Miss. 894, 902, 137 So. 2d 136, 138-39 (1962). The seawall project requires easements from landowners. Some permanent easements are required for access, drainage, maintenance, and other purposes. Also required are temporary construction easements, which will revert to the owners. The easements at issue are for temporary construction, not to exceed thirty-six months, and involve small parcels (Daricek, 0.14 acre; Beckemeyer, 0.11 acre; Fitch, .004 acre).

¶3.    From the beginning of this project, the Hancock County Board of Supervisors ("board") followed the statutory procedures of the Seawall Act. *See* Miss. Code Ann. §§ 65-33-1 to 65-33-71 (Rev. 2005). In accordance with that statute, the board certified to the governor that a seawall was necessary to protect Beach Boulevard. The governor then appointed five members to the Hancock County Road Protection Commission ("commission"). *See* Miss. Code Ann. § 65-33-27 (Rev. 2005).

¶4. The first attempt to obtain the necessary temporary easements from the landowners was via a letter from the Corps in August 2008, followed by a second letter in February 2009. Enclosed with the letters were easement agreements. All of the affected owners, except the three appellants, agreed to the easements. The Daricek property and the Beckemeyer property are on either side of railroad tracks that run east and west through Bay Saint Louis. The Fitch property is located several lots away from the property of the other two appellants.

¶5. Although the owners now argue that the board never negotiated with them, they conceded at a hearing that the Corps had negotiated with them when the original letters were sent. The owners were unwilling to grant the easements without compensation. The Corps countered that lack of compensation was justified because of the expected increase in the value of the condemnees' property after the construction of the new seawall.

¶6. The board proceeded to condemn the property under the Seawall Act. *See* Miss. Code Ann. § 65-33-23 (Rev. 2005). The commission published notice of the condemnation in a newspaper in Hancock County. The notice listed the three landowners by name. All three landowners responded with claims for compensation as provided for in the statute. *See* Miss. Code Ann. § 65-33-31 (Rev. 2005). The board responded by sending letters (mailed May 27, 2009) to the landowners, informing them that the board would visit the properties on June 8, 2009, to assess the damages claimed by the owners. On that date, a team of appraisers, including a member of the board, visited the properties, but the owners did not attend.[2]

---

[2]Others attending were a commission member, the county tax assessor, the chancery clerk, and Corps personnel (project manager, acquisition agent, and a property appraiser).

4

¶7. Following the site assessment, the board passed at its meeting on June 24, 2009, a seawall resolution, denying the claims of the three owners. The resolution was entered into the minutes of the board's meeting, and a copy of the minutes was certified as a true copy by the Clerk of the Board of Supervisors. All five board members were listed by name as having voted in favor of the resolution, which called for the taking of the property. The basis for the board's decision was detailed in the resolution, as follows:

> The benefit conferred upon the property owner by erection of the Seawall exceeds, in terms of value, any damage that may be incurred by [the property owner], and therefore, the property . . . will have an enhanced value as a result of the erection of the Seawall. As such, the Board finds that just compensation for this claim is $0.00. The Board further finds that it is entitled to offset damages incurred by the landowner with the value of the enhancement conferred upon the landowner by completion of the Project, as the prohibition against using enhancement as an offset is found in Mississippi Code Annotated § 11-27-21 (1972), and the procedure being employed by the Board by this instance is set forth in Mississippi Code Annotated § 65-33-1, et seq., wherein no such prohibition is found.

¶8. The landowners appealed to the Circuit Court of Hancock County by submitting a Suggested Bill of Exceptions under the statute applying generally to appeals from the decisions of municipal authorities. *See* Miss. Code Ann. § 11-51-75 (Rev. 2002). The board requested that the county's actions be affirmed. The board submitted that its actions were proper under the Seawall Act and that the landowners' right to an appeal was provided for specifically in the Seawall Act. *See* Miss. Code Ann. § 65-33-33 (Rev. 2005). The landowners responded by arguing that (1) the Seawall Act is unconstitutional; (2) the Seawall Act was repealed or superseded by the Real Property Acquisition Policies Act ("RPAPA"); (3) the manner in which the property was condemned had resulted in an unconstitutional taking; (4) the manner in which the property was condemned was not in compliance with the

5

procedural requirements of the Seawall Act or the RPAPA; and (5) the board had violated the separate Eminent Domain Act's prohibition of using enhancement as an offset to a compensation amount. *See* Miss. Code Ann. §§ 43-37-1 to 43-37-13 (Rev. 2009); Miss. Code Ann. § 11-27-21 (Rev. 2004).

¶9.    In August 2009, the circuit court heard arguments and issued an order affirming the actions of the board. The circuit court held that "[t]he issue of damages, however, shall be revisited and, if necessary, subject to a jury trial in order to determine the amount of compensation that [the landowners are] owed." Regarding the constitutionality of the Seawall Act and the taking, the circuit court found that the landowners' due-process rights had not been violated, as the landowners had notice and an opportunity to be heard, by way of: (1) the newspaper notice, (2) the claim to the board, (3) the actual notice of assessment visit, and (4) the right to accompany the appraisers. Regarding the RPAPA's effect on the Seawall Act, the circuit court agreed that both statutes applied, and that both had been followed by the Board. Under the RPAPA, the circuit court found that the Board had (1) negotiated with the landowners (via the Corps); (2) appraised the land via the site-assessment visit; (3) submitted a written statement (the board's resolution) to the landowners describing the basis on which the compensation had been determined; and (4) initiated a formal condemnation hearing (board meeting) when it became necessary to acquire the temporary easements through eminent domain. Under the Seawall Act, the circuit court found that the board had provided the landowners due and legal notice. The newspaper condemnation notice and the notice of the assessment visit had informed the landowners of their right to make a claim and to accompany the appraisers. The circuit court found that, if the

6

landowners desire a jury trial on the issue of damages, the Seawall Act entitles them to such a trial. *See* Miss. Code Ann. § 65-33-33 (Rev. 2005). Thus, damages, if any, ultimately would be determined by a jury.

¶10. The landowners petitioned this Court for an interlocutory appeal, which was granted. This Court found that the appeal should be expedited and invited the Mississippi Attorney General to file an *amicus curiae* brief.

## ISSUES

¶11. The issues[3] are as follows:

I. Whether the Seawall Act is unconstitutional.

II. Whether the Seawall Act has been repealed or superseded by the Real Property Acquisition Policies Act.

III. Whether the county complied with all constitutional and statutory requirements in condemning the property.

IV. Whether it was error to find that the landowners are entitled to a jury trial, or whether the matter should be remanded to the Board of Supervisors to start anew under a separate Eminent Domain statute and/or the Real Property Acquisition Policies Act.

## STANDARD OF REVIEW

---

[3]The landowners raise the compensation amount as an issue. However, our holding is that compensation *vel non* and the legal issues surrounding damages should be considered at a jury trial, if requested, upon remand. Thus, damages are not discussed separately, but will be discussed only as they relate to other issues. The landowners raise issues (attorney fees, costs, and expenses) in this appeal that were not brought below, and that are not pleaded for in the petition for interlocutory appeal. Thus, these issues are procedurally barred.

¶12. "A 'very heavy burden' rests upon this Court before it may find a statute unconstitutional." *State v. Bd. of Levee Comm'rs for Yazoo-Miss. Delta*, 932 So. 2d 12, 19 (Miss. 2006) (quoting *Moore v. Bd. of Supervisors of Hinds County*, 658 So. 2d 883, 887 (Miss. 1995)). The *Board of Levee Commissioners* Court continued as follows:

> "[I]t behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we." *State v. Roderick*, 704 So. 2d 49, 52 (Miss. 1997). Therefore, "under Mississippi law a party challenging the constitutionality of a statute must prove unconstitutionality beyond a reasonable doubt." *Cities of Oxford, Carthage, Starkville and Tupelo v. Northeast Elec. Power Ass'n*, 704 So. 2d 59, 65 (Miss. 1997). In other words: one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

*Bd. of Levee Comm'rs*, 932 So. 2d at 19-20 (citations omitted). The other issues, including the construction and application of statutes claimed to be in conflict, are legal questions subject to de novo review. *See Aladdin Constr. Co., Inc. v. John Hancock Life Ins. Co.*, 914 So. 2d 169, 174 (Miss. 2005).

## DISCUSSION

### I.      Whether the Seawall Act is unconstitutional.

¶13. The landowners argue the following:

> [T]he Seawall Act . . . cannot be applied without violating the Constitution of the State of Mississippi and . . . of the United States of America. The process of condemning private property is a judicial function rather than a legislative function and the Seawall Act does not recognize this separation of powers and its implementation cannot be carried out without violating the Constitutional

8

mandate and without violating due process of law.  Therefore . . . the Court should consider declaring these Sections of the Code unconstitutional.

The landowners cite the Fifth and Fourteenth Amendments to the U.S. Constitution and Article Three, Sections Fourteen, Seventeen and Twenty-four of the Mississippi Constitution. *See* U.S. Const. amend. V, XIV; Miss. Const. art. 3, §§ 14, 17, 24.  The Fourteenth Amendment to the U.S. Constitution and Section Fourteen of the Mississippi Constitution prohibit deprivation of property without due process of law.  *See* U.S. Const. amend. XIV; Miss. Const. art. 3, § 14.  *See also* **Nat'l Collegiate Athletic Ass'n v. Gillard**, 352 So. 2d 1072, 1081 (Miss. 1977); **Walters v. Blackledge**, 220 Miss. 485, 515, 71 So. 2d 433, 444 (1954).  The Fifth Amendment to the U.S. Constitution has a similar prohibition and requires the payment of "just compensation."  *See* U.S. Const. amend. V.  Section Seventeen of the Mississippi Constitution follows:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

Miss. Const. art. 3, § 17.  Section Twenty-four of the Mississippi Constitution follows: "All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay."  Miss. Const. art. 3, § 24.

¶14.    The Mississippi Legislature, following its constitutional mandate to prescribe by law the manner in which private property, which extends "along the beach or shore of any body of tidewater," may be taken for public use, enacted the Seawall Act.  *See* Miss. Code Ann.

9

§ 65-33-1 (Rev. 2005). The Legislature devoted an entire chapter of thirty-six sections of the Mississippi Code to the Seawall Act. It provides a mechanism for a county, acting through its board of supervisors, to finance, acquire property for, and construct a seawall when necessary. *See* Miss. Code Ann. §§ 65-33-1 to 65-33-71 (Rev. 2005). The statute was first enacted in 1924. The act's first section grants a board of supervisors the power to build and maintain a seawall if necessary to protect a public road or street. *See* Miss. Code Ann. § 65-33-1 (Rev. 2005). The act "clothe[s]" the boards of supervisors "with the power and authority, and it is made their duty, to exercise the right of eminent domain in order to procure the right of way for such roads, streets, highways, sea walls . . . and such other devices as may be adopted for the protection of such highways. " Miss. Code Ann. § 65-33-23 (Rev. 2005). Thus, the Legislature fulfilled its constitutional duty to prescribe by law the power to exercise eminent domain, and in the same statute, established protections for the landowner.

¶15. The act details the process as follows:

> Whenever it shall become necessary to construct, widen, or protect any highway under the provisions hereof, the road protection commission shall make publication for thirty days in some newspaper published in the county wherein such improvements are made, setting forth the commencement and termination, with a general outline of the nature and extent thereof. When any owner of land or other person shall claim compensation for land taken for such purpose, or for damage sustained by the construction, widening, improvement, or protection of such road or highway, he shall petition the board of supervisors in writing within thirty days after the expiration of the time provided for such publication, setting forth the nature and character of the damages claimed. Thereupon the board shall, on five days' notice to petitioner, go on the premises and assess the damages sustained by him. The finding of the board shall be in writing, signed by the members agreeing to it, and must be entered on the minutes at the next meeting; but if the damages sustained and

claimed be less than the cost of assessing, the board may allow the same without inquiry.

Miss. Code Ann. § 65-33-31 (Rev. 2005). If a landowner is dissatisfied at this juncture, the Seawall Act further grants a landowner the right to appeal to circuit court, as follows:

> All proceedings of the board of supervisors and the road protection commission in . . . protecting any such highway and assessing damages therefor may be reviewed by the circuit court in respect to any matter of law arising on the face of the proceeding. On the *question of damages*, the case may be tried anew and the damages may be assessed by a jury if the owner of the land so desires. The board of supervisors shall grant appeals for that purpose when prayed for, on appellant giving bond for cost in such penalty as the board may require, not exceeding $200.00, payable to the county.

Miss. Code Ann. § 65-33-33 (Rev. 2005) (emphasis added). Thus, if a landowner is aggrieved, he or she has a remedy by due course of law in the courts of Mississippi. A landowner dissatisfied with the assessment of damages by the board has the right to request a jury trial on the question of damages. Thus, the damage assessment is made by the landowner's fellow citizens, not the condemning authority, the board.

¶16.   This Court has stated that "due process is flexible and calls for such procedural protections as the particular situation demands." *Miss. Bd. of Veterinary Med. v. Geotes*, 770 So. 2d 940, 943 (Miss. 2000) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972). "'The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.' Due process therefore requires that a defendant be given adequate notice." *Vincent v. Griffin*, 872 So. 2d 676, 678 (Miss. 2004) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798-99, 107 S. Ct. 2124, 2133, 95 L. Ed. 2d 740 (1987)). The Seawall Act calls

11

for a thirty-day period of newspaper notices and then allows thirty additional days for a landowner to submit a claim. The county then is required to give five days' actual notice of an assessment visit. Following the board's final decision on the landowner's claim, the landowner may appeal to circuit court.

¶17. Thirty-days' notice is constitutionally sufficient. In a condemnation case under a different statute, this Court found a two-day notice requirement to be unconstitutional. ***Branaman v. Long Beach Water Mgmt. Dist.***, 730 So. 2d 1146, 1150 (Miss. 1999). Nonetheless, the ***Branaman*** Court affirmed the taking because the chancellor had given the defendant additional time to prepare for trial. *Id.* at 1151. In finding the statute in ***Branaman*** unconstitutional, this Court declared, "Until such time as the Mississippi Legislature addresses the issue of adequate notice, the Mississippi Rules of Civil Procedure will control the amount of notice that a landowner should be given after a complaint is filed." *Id.* Subsequently, the statute was amended to require thirty-days' notice. *See* Miss. Code Ann. § 51-29-39 (Rev. 2003). In ***Geotes***, this Court held that thirty-days' notice does not violate due-process rights. *See* ***Geotes***, 770 So. 2d at 944-45 ("Even if the previous notice was not adequate, it was cured by the Board leaving the record open and giv[ing] Geotes thirty days to respond.").

¶18. The Seawall Act complies with the ***Mathews*** standard in that it allows for an "opportunity to be heard at a meaningful time and in a meaningful manner." ***Mathews***, 424 U.S. at 333. Landowners may submit a written claim, accompany the assessors, appeal legal issues to the circuit court, and request a jury trial on damages. Miss. Code Ann. § 65-33-33 (Rev. 2005).

12

¶19. This Court upheld the constitutionality of a similar statue in ***Jones v. Belzoni Drainage District of Washington County***, 102 Miss. 796, 59 So. 921 (1912). The ***Jones*** Court described the statute as follows:

> The whole matter of notice and protest, hearing, and decision is worked out in detail, and the right of appeal is carefully preserved. The assessment of damages is provided for in [the statute]; and, in short, a most elaborate system to preserve and conserve the interests and rights of all parties concerned is prescribed by the act. It thus appears that all reasonable grounds of complaint on account of being deprived of due process of law has no foundation in fact or in law. The Legislature was careful to incorporate the entire Bill of Rights in the act – if not in words, certainly in substance.

*Id.* at 923. The same observation could be made about the Seawall Act.

¶20. This Court has affirmed the constitutionality of the Seawall Act. *See **Henritzy v. Harrison County***, 180 Miss. 675, 178 So. 322 (1938); ***Ladner v. Road Prot. Comm'n***, 150 Miss. 416, 116 So. 602 (1928). In ***Ladner***, the Court dealt with a different issue. ***Ladner***, 116 So. at 602. Ladner filed a taxpayer suit claiming that the grant of road-building power to a road protection commission violated Mississippi Constitution Article 6, Section 170. *Id.* at 602, 605. The ***Ladner*** Court held that the board of supervisors retained its constitutional power, as the commission's actions required board approval. *Id.* at 605. In ***Henritzy***, a decade after the construction of its original seawall, Harrison County sought an injunction against a landowner who refused to remove a structure that prevented the county from making improvements to the seawall. ***Henritzy***, 178 So. at 322. The Court found the statute to be constitutional, *inter alia*, because newspaper notice is sufficient for an *in rem* proceeding, and the right to a jury trial is preserved. *Id.* at 325-26. The ***Henritzy*** rationale is still apt even though the *in rem-in personam* distinction has lost its significance in another

13

context (jurisdiction over residents of other states). *See **Shaffer v. Heitner***, 433 U.S. 186, 195, 97 S. Ct. 2569, 2575, 53 L. Ed. 2d 683 (1977). The ***Henritzy*** Court explained its decision as follows:

> We consider the proceedings of the boards of police in this State, condemning lands to be used as public highways, strictly proceedings in rem, and that the orders made by them in relation thereto, are to be governed by the rules and principles applicable to such cases. Such was evidently the intention of the legislature, as it has not made any provision on the subject of notice, nor directed any manner in which it shall be given. The whole community is vitally interested in the efficient exercise, by the boards of police, of the jurisdiction on the subject of roads conferred upon those tribunals by the constitution and laws. The jurisdiction conferred upon them is of a peculiar character, in which every citizen is interested. The subject-matter on which they act, is of a public nature, independent of private parties. The judgments rendered by them act upon the thing itself, which is condemned to the use of the public, and we believe the public interests imperatively require that the orders made by them, when made pursuant to the statutes, should conclude the whole world, whether actual notice was given or not to the parties interested in the premises.

*Henritzy*, 178 So. at 324-25 (quoting ***Stewart v. Bd. of Police of Hinds County***, 25 Miss. 479, *3 (1853)). Present notions of adequate notice to satisfy due-process concerns may well be different than those of the ***Stewart*** Court. However, the issue of notice in the proceedings *sub judice* is moot, for the landowners have conceded notice of these proceedings at every juncture. Thus, "whether actual notice was given or not to the parties interested in the premises" is not before this Court for decision. *Id.* at 325.

¶21.    The landowners' argument that the Seawall Act turns condemnation into a legislative process rather than judicial process is without merit. The Seawall Act provides for adjudication of claims by boards of supervisors, which are part of the judicial branch of state government. *See* Miss. Const. art. 6, § 170; Miss. Code Ann. § 65-33-31 (Rev. 2005); ***Bd.***

*of Levee Comm'rs*, 932 So. 2d at 25 n.2. This Court has held that boards of supervisors are quasi-judicial bodies. *See Harris v. Harrison County Bd. of Supervisors*, 366 So. 2d 651, 655 (Miss. 1979); *Glass v. Hancock County Election Comm'n*, 250 Miss. 40, 49, 156 So. 2d 825, 830 (1963). Finally, even if we were to assume *arguendo* that the acts of the board were purely legislative in nature, the Seawall Act provides for independent judicial review of the actions of the board, as this case clearly demonstrates. *See* Miss. Code Ann. § 65-33-33 (Rev. 2005).

¶22. For the reasons detailed above, we find that the landowners have failed in their burden to show beyond a reasonable doubt that the Seawall Act is unconstitutional.

## II. Whether the Seawall Act has been repealed or superseded by the Real Property Acquisition Policies Act.

¶23. The landowners seek application of the RPAPA (enacted in 1972) to the exclusion of the Seawall Act (enacted in 1924). *See* Miss. Code Ann. §§ 43-37-1 to 43-37-13 (Rev. 2009); 65-33-1 to 65-33-71 (Rev. 2005). The county acted under the authority granted by the Seawall Act, but conceded that the RPAPA also applies. *See id.* As no litigant challenges the applicability of the RPAPA, that issue is not before the Court. However, whether the board complied with the RPAPA is at issue. Thus, applicability will be discussed where necessary to adjudicate the issue of statutory compliance. The RPAPA imposes several requirements on a condemnor, including the following:

> Any person, agency or other entity acquiring real property for any project or program in which public funds are used shall comply with the following policies:
>
> (a) Every reasonable effort shall be made to acquire expeditiously real property by negotiation.

15

(b) Real property shall be appraised before the initiation of negotiations, except that the acquiring person, agency or other entity may adopt a procedure in compliance with federal regulations to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value. For the purposes of this chapter, property with a low fair market value is property with a fair market value of Ten Thousand Dollars ($10,000.00) or less. The owner or his designated representative shall be given an opportunity to accompany the appraiser during his inspection of the property.

(c)(i) Except as otherwise provided for in subparagraph (ii) of this paragraph, the price that shall be paid for real property shall be the lesser of the best negotiated price or the approved appraisal of the fair market value or the price at which the property is offered for sale. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which the property is acquired or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The owner of the real property to be acquired shall be provided with a written statement of, and summary of the basis for, the amount established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated.
(ii) The purchase price for real property may exceed the amount offered as just compensation for the property when reasonable efforts to negotiate an agreement at that amount have failed, and the person, agency or other entity seeking to acquire the property approves an administrative settlement as reasonable, prudent and in the best interests of the public. . . .

(d) No owner shall be required to surrender possession of real property before the agreed purchase price is paid or there is deposited with the state court, in accordance with applicable law, for the benefit of the owner an amount not less than the approved appraisal of the fair market value of such property, or the amount of the award of compensation in the condemnation proceeding of such property.
. . .
(h) If an interest in real property is to be acquired by exercise of power of eminent domain, formal condemnation proceedings shall be instituted. The acquiring authority shall not intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.
. . . .

Miss. Code Ann. § 43-37-3 (Rev. 2009).

## A. Whether the RPAPA repealed the Seawall Act.

¶24. The RPAPA did not explicitly repeal the Seawall Act, nor does it refer to the Seawall Act in any way. *See* Miss. Code Ann. §§ 43-37-1 to 43-37-13 (Rev. 2009). "In order for a subsequent act to repeal a former one expressly, it must point out the statute repealed with sufficient certainty." ***Roberts v. Miss. Republican Party State Executive Comm.,*** 465 So. 2d 1050, 1051 (Miss.1985) (quoting ***Ex parte McInnis****,* 98 Miss. 773, 783, 54 So. 260, 262 (1911)). The ***Roberts*** Court continued, "If it was the purpose of the legislature to repeal [a section] of the Code . . . it should have said so explicitly in the repealing act; but this they did not do." ***Id.*** at 1052. Therefore, we find that the Seawall Act was not expressly repealed by the RPAPA.

¶25. Although not expressly repealed, the Seawall Act might have been repealed by implication, if it conflicts with the RPAPA. However, this Court has stated, "That implied repeals are not favored has been the universal declaration of this and of all courts." ***Id.*** at 1051. *See also **Associated Press v. Bost***, 656 So. 2d 113, 115 (Miss. 1995). This Court has held that the RPAPA is not in direct conflict with a statute very similar to the Seawall Act. *See **Branaman***, 730 So. 2d at 1152; Miss. Code Ann. § 51-29-39 (Rev. 2003). The standard set by this Court requires there to be "a plain and unavoidable repugnancy between" statutes before one may be said to have repealed the other by implication. ***Roberts***, 465 So. 2d at 1052 (quoting ***McInnis****,* 54 So. at 262). Even when statutes are "in apparent conflict," they "should if possible be construed in harmony with each other to give effect to each." ***Roberts***, 465 So. 2d at 1052. Although areas of apparent conflict will be discussed below, we find that the high standard for repeal by implication has not been met.

17

### B.    Whether the RPAPA supersedes the Seawall Act.

¶26.    Distinctions exist between the RPAPA and the Seawall Act.  The RPAPA provides different protections for the landowner.  The RPAPA requires a reasonable effort to acquire property by negotiation, while the Seawall Act does not mention negotiation.  Miss. Code Ann. § 43-37-3(a) (Rev. 2009).  The RPAPA requires an appraisal unless the property has a low fair market value, and requires that the owner be given an opportunity to accompany the appraiser.  Miss. Code Ann. § 43-37-3(b) (Rev. 2009).  The Seawall Act has similar provisions.  Miss. Code Ann. § 65-33-31 (Rev. 2005).  The RPAPA requires written notice of the basis for a compensation amount.  Miss. Code Ann. § 43-37-3(c)(i) (Rev. 2009).  The Seawall Act has similar language, requiring a written finding on damages.  Miss. Code Ann. § 65-33-31 (Rev. 2005).    The RPAPA has requirements regarding the amount of compensation, while the Seawall Act does not.  Miss. Code Ann. § 43-37-3(c) (Rev. 2009).  Subsection 3(d) of the RPAPA requires the agreed purchase price, if any, to be paid before the owner is required to surrender the property.  Miss. Code Ann. § 43-37-3(d) (Rev. 2009).

¶27.    The RPAPA requires "formal condemnation proceedings."  Miss. Code Ann. § 43-37-3(h) (Rev. 2009).[4]  The Seawall Act provides a detailed process of condemnation, requiring formal proceedings in the Board of Supervisors and, if appealed, formal judicial proceedings in the courts of this State.  *See* Miss. Code Ann. §§ 65-33-31, 65-33-33 (Rev. 2005).  The term "formal condemnation proceedings" is not defined in the RPAPA.  *See* Miss. Code Ann.

---

[4]The landowners argue that the only "formal" condemnation procedures are those in a Special Court of Eminent Domain under the Eminent Domain statute to be discussed below.  *See* Miss. Code Ann. §§ 11-27-1 to 11-27-51 (Rev. 2002).

18

§§ 43-37-2, 43-39-5 (Rev. 2009). "Formal" is defined as "Pertaining to or following established procedural rules, customs, and practices." Black's Law Dictionary 542 (abr. 8th ed. 2005). We find, as the circuit court did, that the condemnation procedure under the Seawall Act is a formal procedure as required by the RPAPA. *See* Miss. Code Ann. §§ 43-37-3(h) (Rev. 2009); 65-33-31, 65-33-33 (Rev. 2005).

¶28. In the same subsection requiring a formal procedure, the RPAPA states, "The acquiring authority shall not *intentionally* make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property." Miss. Code Ann. § 43-37-3(h) (Rev. 2009) (emphasis added). The landowners argue that this language is in conflict with the Seawall Act's requirements that the landowners make a claim, file an appeal, and request a jury trial. *See* Miss. Code Ann. §§ 65-33-31, 65-33-33 (Rev. 2005). However, the county is required to initiate the taking. Once such procedures are instituted by the county, the owner then has some procedural requirements under the Seawall Act, but not to prove the fact of the taking. Thus, the Seawall Act is not in conflict with the RPAPA. These requirements concern damages, not "the fact of the taking . . . ." Miss. Code Ann. § 43-37-3(h) (Rev. 2009).

¶29. Finally, the landowners' argument that the Seawall Act is "vague [and] unclear" and thus superseded by the RPAPA is without merit. First, the landowners do not specify which part of the Seawall Act is "vague [and] unclear." Further, if there is an ambiguity when construing multiple statutes, the more specific law (Seawall Act) controls, rather than the more general statute (RPAPA). *See Madison County Bd. of Supervisors*, 873 So. 2d at 91; *Branaman*, 730 So. 2d at 1152; *Kilgore v. Barnes*, 508 So. 2d 1042, 1045-46 (Miss. 1987).

Therefore, we find that the Seawall Act and the RPAPA are not hopelessly in conflict. Thus, the RPAPA does not supersede any part of the Seawall Act, and the two statutes are to be applied in conjunction with each other.

### III. Whether the county complied with all constitutional and statutory requirements in condemning the property.

#### A. Constitutonal requirements

¶30. The following are required by the Constitutions of the United States and Mississippi before private property may be taken or damaged for public use: (1) notice; (2) opportunity to be heard; (3) due and just compensation to the owner in a manner prescribed by law; (4) public use determined as a judicial question; (5) courts open to provide a remedy by the due course of law. *See* U.S. Const. amend. V, XIV; Miss. Const. art. 3, §§ 14, 17, 24.

¶31. As noted in Issue I, the landowners had adequate notice and an opportunity to be heard. The issue of whether a compensation amount of $0.00 can be "due" or "just" was not decided by the circuit court; thus, that issue is not before us. As detailed above in issues I and II, and below in Issue III-B, the condemnation was carried out in a manner prescribed by law under the Seawall Act and in compliance with applicable portions of the RPAPA. *See* Miss. Code Ann. §§ 43-37-1 to 43-37-13 (Rev. 2009); 65-33-1 to 65-33-71 (Rev. 2005). The landowners concede that the replacement of a seawall is a public use. Therefore, public use is not at issue. If it had been, it would be subject to judicial review by the courts. Thus, the courts of Mississippi are open to provide a remedy and to protect landowners from their government. Therefore, we find that the procedures to date have not been in derogation of the constitutional rights of the landowners.

20

## B.       Statutory requirements

¶32.    The landowners argue that this Court's precedent requires strict construction of any statute conferring the power of eminent domain. *See Miss. Power & Light Co. v. Conerly*, 460 So. 2d 107, 112-13 (Miss. 1984) (condemnation for interstate power lines exceeded the authority of the statute); *Roberts v. Miss. State Highway Comm'n*, 309 So. 2d 156, 161 (Miss. 1975) (condemnation of land for a roadside weigh station did not include mineral rights); *Ferguson v. Bd. of Supervisors of Wilkinson County*, 149 Miss. 623, 115 So. 779, 779-80 (1928) (no adjudication that taking was in the public interest); *Wise v. Yazoo City*, 96 Miss. 507, 51 So. 453, 454 (1910) (condemnation for a spur track exceeded authority granted in city charter). According to the landowners, any procedural shortcoming on the part of the county requires a remand to the board. The cases cited do require strict construction of the statutes, with landowners receiving the benefit of the doubt. *See id.* However, the issue in each of these cases was the *right* of the condemnor to exercise the power of eminent domain, not the *procedure* employed. *Conerly*, 460 So. 2d at 111 ("The right to exercise the power is strictly limited to the purposes specified in the statute conferring it."); *Roberts*, 309 So. 2d at 159; *Ferguson*, 115 So. at 780 ("Where there is any doubt of the right to exercise the power, the landowner is entitled to the benefit of such doubt."). The *Wise* Court stated the following:

> This high power is never to be presumed to be confided to any public or private body or corporation, however great may be the necessity for it to have and exercise such power. When it is asserted by any person or corporation, the state's assent must be clearly given in legislative acts, and the subjects for which it may be exercised specifically named. No state has yet given to any corporation the sweeping power to condemn and take private property for "any public purpose," without preceding every such clause with specifically named

21

subjects for which it may exercise the right.  Even if it can be done, we do not believe any state will ever confide this sovereign power, so liable to abuse and filled with possibility of oppression, by a clause so sweeping as to vest any individual or corporation with the power to condemn at pleasure for any and every public use, without specifically naming the public use.

*Wise*, 51 So. at 455-56.  As stated above, the landowners do not assert that a seawall is not a public use.  The landowners' argument is not that the replacement of a seawall exceeds the authority granted to the board, but that the wrong statute was applied and that the statutes, whether applicable or not, were not followed.  In the Seawall Act, the Legislature granted counties the power to condemn land to erect, improve and maintain seawalls.  *See* Miss. Code Ann. §§ 65-33-1, 65-33-23  (Rev. 2005). The Seawall Act withstood attacks in the early part of the twentieth century, and decisions of this Court upheld its constitutionality. *See Henritzy*, 178 So. at 325-26, *Ladner*, 116 So. at 605.  We find no rational basis or newly found knowledge or wisdom to overrule that precedent.  Thus, the county had the right to exercise its eminent-domain power in this instance.

¶33.    The Seawall Act requires publication for thirty days in a newspaper published in the county wherein the improvements will be made.  *See* Miss. Code Ann. § 65-33-31 (Rev. 2005). The landowners concede that this was done.  The act requires actual notice of an assessment visit. *See id.*  The landowners signed certified-mail receipts upon receiving such notices.  Also required is a written finding, signed by the members voting in favor, and entered into the minutes.  *See id.* The board's resolution is a written finding and was entered into the minutes.  The resolution was signed by the clerk of the board of supervisors, who is also the chancery clerk.  He certified that the copy was a true and correct copy of the board's order.  All five members of the board were listed by name as having voted in favor, although

22

their signatures are not on the resolution. We find compliance with the statute. *See Shipman v. N. Panola Consol. School Dist.*, 641 So. 2d 1106, 1116-17 (Miss. 1994) ("technical shortcoming of the minutes" – delayed signature by board president and failure of secretary to attest – does not invalidate board's action); *Butler v. State*, 241 So. 2d 832, 835 (Miss. 1970) (failure to sign minutes not a radical departure from the statute such that the actions of a board of supervisors should be rendered void).

¶34. The landowners argue that, because not all of the five members of the board attended the assessment visit, the county did not comply with the requirement that "the board shall, on five days' notice to petitioner, go on the premises and assess the damages sustained . . . ." *See* Miss. Code Ann. § 65-33-31 (Rev. 2005). However, as the landowners concede, a member of the board did attend the assessment, along with a member of the commission, as well as two other county officials and three Corps personnel. Therefore, the "board" did attend in the person of one of its members along with several agents of the board. *See Childs v. Hancock County Bd. of Supervisors*, 1 So. 3d 855, 860 (Miss. 2009) (not error for board to delegate authority to a planning commission).

¶35. The next section of the Seawall Act requires the county to grant an appeal brought by a landowner. *See* Miss. Code Ann. § 65-33-33 (Rev. 2005). This appeal was granted, even though the landowners brought it by submitting a Suggested Bill of Exceptions, a procedure inapplicable to the Seawall Act. *See* Miss. Code Ann. § 11-51-75 (Rev. 2002).

¶36. The RPAPA requires, *inter alia*, the following: (1) negotiation; (2) appraisal before the initiation of negotiations, (3) price requirements, (4) no requirement to surrender property before the agreed price is paid or an amount deposited with the State court, (5) formal

23

process, (6) no intentional requirement for the landowner to initiate proceedings. *See* Miss. Code Ann. § 43-37-3 (Rev. 2009). The landowners conceded that the Corps negotiated with them. Thus, the negotiation issue was not before the trial court, and it was unnecessary to find that that RPAPA clause had been followed. Regarding the requirement of an appraisal prior to negotiations, the Corps asserted in its letters that an assessment had been made. Even so, the RPAPA exempts that requirement regarding properties with a low fair market value. *See* Miss. Code Ann. § 43-37-3(b) (Rev. 2009). The price requirements of the RPAPA (paragraph (c)), as they concern the "purchase price"of "real property acquired," would apply to a sale of land, but not to the interest in real property at issue here, temporary construction easements. *See* Miss. Code Ann. § 43-37-3(c) (Rev. 2009). The requirement that any agreed payment be made before surrender of a property is not before the Court, as there has been no taking as yet. The final two requirements (formal process and the requirement to initiate) are discussed above.

¶37.  Some of the RPAPA clauses being inapplicable, we find that the trial court was in error to find that the RPAPA had been complied with fully. However, this is harmless error, as the RPAPA clause most applicable, paragraph (h), was followed. There were "formal condemnation proceedings" regarding this "interest in real property . . . to be acquired by exercise of power of eminent domain . . . ." Miss. Code Ann. § 43-37-3(h) (Rev. 2009). We affirm the decision of the circuit court that both statutes were followed. Other than the inapplicable RPAPA clauses detailed above, any discrepancies between the procedure employed and the statutory requirements (signatures, attendance at the site-assessment) are

24

harmless errors at worst, as they do not pertain to the power of the board to condemn the property, nor do they infringe on the constitutional rights of the landowners.

> ### IV. Whether it was error to find that the landowners are entitled to a jury trial, or whether the matter should be remanded to the Board of Supervisors to start anew under the separate Eminent Domain statute and/or the Real Property Acquisition Policies Act.

¶38. Having found that the Seawall Act is constitutional and should be applied in conjunction with the RPAPA, and that both statutes were followed by the board in a manner that did not infringe on the constitutional rights of the landowners, we find that it was not error for the circuit court to find that the landowners are entitled, upon request, to a jury trial in circuit court. *See* Miss. Code Ann. § 65-33-33 (Rev. 2005).

¶39. The landowners argue that the provisions of the Eminent Domain Act should apply to the exclusion of the Seawall Act. *See* Miss. Code Ann. §§ 11-27-1 to 11-27-51 (Rev. 2002), 65-33-1 to 65-33-71 (Rev. 2005). Specifically, the landowners seek application of the Eminent Domain Act's prohibition of using enhancement as an offset to a compensation amount. *See* Miss. Code Ann. § 11-27-21 (Rev. 2002). The landowners submit "that the Legislature knew what it was doing when . . . it provided for the establishment of the Special Court of Eminent Domain." Indeed, this Court reads the Eminent Domain Act, as all other statutes, with that presumption in mind. However, the landowners turn a blind eye to the first sentence of the Eminent Domain Act. The act is applicable, "except as elsewhere specifically provided under the laws of the state of Mississippi." Miss. Code Ann. § 11-27-1 (Rev. 2002). The Seawall Act provides the specific statutory exception, making the Eminent Domain Act inapplicable herein, while at the same time clothing the landowners with the

25

protections our Constitution demands. *See* Miss. Const. art. 3, § 24. Further, the landowners are guaranteed protections similar to those provided under the Eminent Domain Act, most importantly, a jury trial by their peers for damages. *See* Miss. Code Ann. §§ 11-27-13 (Rev. 2002), 43-37-3 (Rev. 2009).

**CONCLUSION**

¶40.    We affirm the order of the Hancock County Circuit Court and remand to that court for proceedings consistent with this Court's opinion.

¶41.    **AFFIRMED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**