LEAVENWORTH *et al. v.* HUNTER.*

(Division B.   May 7, 1928.)

[117 So. 122.   No. 26818.]

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, p. 900, n. 99; Trespass, 38Cyc, p. 1059, n. 14; p. 1104, n. 70; p. 1115, n. 4; Vendor and Purchaser, 39Cyc, p. 1683, n. 89.

*Maynard, FitzGerald & Venable,* for appellants.

*Wassell Randolph, A. M. Coates,* and *Ed. Brewer,* for appellee.

Argued orally by *Geo. F. Maynard, Sr.,* and *Geo. F. Maynard, Jr.,* for appellant, and *Ed. Brewer,* for appellee.

ETHRIDGE, P. J. This is a companion case to *J. H. Leavenworth & Son, Inc.,* v. *C. W. Hunter,* No. 26802, recently decided, 116 So. 593, and some of the questions presented are common to each case.

In the present case, the suit was brought in the chancery court of the First district of Coahoma county, and the appellee, Hunter, and others working for him, were enjoined by the complainants from cutting certain timber upon certain lands described in the bill. In the original bill, the complainants asked for an accounting of the number of trees cut and removed, and the number of cords of wood cut and sold to the government. The defendant, Hunter, answered, denying that they were entitled to an accounting. The record is a voluminous one, containing more than one thousand three hundred pages, and the case will not be stated in detail.

The testimony for the complainants tended to show that the timber cut was largely from accretions to lands bordering the Mississippi shore. The complainants contended, and offered proof to show, that the lands cut over amounted to about forty-three acres, and the number of trees cut amounted to, approximately, fifty-three thousand.

It appears that there was, originally, an agreement to cut the willow brush, or small trees, from a strip of land along the river running about two miles, with a width of, approximately, one hundred yards, but the contract was never consummated, and the defendant, in cutting the timber, did not confine himself to such strip, but cut beyond it a considerable distance.

It appears to have been the theory of the complainants that the accretions were from lots 7 and 8, owned by them and situated north of lots 12 and 13. The proof

tended to show that lots 12 and 13 of section 21, and large parts of lots 9 and 10, joining those lots on the north, were washed away by the river, and that the bed of the stream, at one time, was on these lands, and that some time about 1894 these lands formed back by accretions, and were restored, and other accretions formed in front of the same, the river receding toward the Arkansas shore. There was much dispute and conflict in the evidence concerning these accretions.

It appears that the complainants, on or about the 1st day of October, 1924, purchased from the state lots 12 and 13, and the chancellor held that the accretions embraced in the controversy over the cutting were a part of these lots, and that the complainants' proof did not sustain the contention of the complainants that the accretions were part of lots 6 and 7. The chancellor further held that the state had title to these lots 12 and 13 prior to October 1, 1924, and that the proof of the complainants were insufficient to establish, with legal certainty, the number of trees cut from these lands subsequent to the 1st of October, 1924, and what part of the timber was cut prior to that time, and, therefore, that it was impossible for the court to render judgment for timber cut subsequently to that time, because the amount thereof was not established with any degree of certainty.

The court further held that the timber cut and removed prior to October 1, 1924, belonged to the state, and that the right of the state to sue for the cutting done prior to that time did not pass, by assignment, to the grantees, the complainants, by the deed of October 1, 1924, and that the right of action for cutting such trees prior to October 1, 1924, was in the state, and not in the complainants.

We think that the proof as to what lands the accretions formed was in such a state of conflict that the chancellor was warranted in holding that the accretions belonged

to the lands that they became a part of, as above stated. The proof as to this question makes it peculiarly a question of fact for the decision of the chancellor, and we are unable to say that this finding is not supported by the evidence, or that it was manifestly wrong, or that such decision would warrant us in reversing his finding as to that fact.

We are also of the opinion that the right of action for a trespass committed prior to October 1, 1924, did not pass by the deed of the state to the complainants; there being no specific assignment of such right of action. Under the case of *Blodgett* v. *Seals,* 78 Miss. 522, 29 So. 852, the right of action for such trespass does not pass as an incident of the deed. The deed conveyed the land as it stood at the time of the conveyance, and did not, in its terms, embrace any right of trespass to the land prior to that date, as was the case in the companion case to this suit, *J. H. Leavenworth & Son, Inc.,* v. *C. W. Hunter.* In that case, there was an express assignment of the right of action for the timber cut on those lands. The buyer bought the land as it then stood, in the absence of a special warranty conveying prior rights of action for the trespass. While color of title and actual possession are sufficient to maintain an action of trespass for cutting and removing timber as against a mere tort-feasor, still, where the title is outstanding in the state, or some private person, or corporation, that fact may be shown in defense to the action of the complainants, where the complainants did not, in fact, have title.

We think there was no estoppel of the defendants, in the case before us, to show, in defense of the suit, that the outstanding title was in the state. It appears in the evidence in this record that the state was claiming and asserting a right against the defendant for cutting the timber, which was cut prior to October 1, 1924, and that suit was pending at the time of the trial of the present case involving the state's right to recover therefor. The

right of action for the trespass and cutting of the timber was in the owner of the land; and, as the chancellor found, as a fact, that the state owned the land to which the accretions were formed, and, consequently, owned the accretions to the land involved in the controversy, the state had the right of action for timber cut prior to this conveyance, and there was sufficient evidence to sustain the chancellor's finding that the accretions did, in fact, form to said lands, and that the lands, in fact, belonged to the state prior to October 1, 1924.

We are therefore of the opinion that the evidence in the record warranted the chancellor in his holdings, and that there is no sufficient ground for the reversal of his findings. It is difficult from the proof to determine when the timber was cut—apparently some was cut before October 1, 1924, and some afterwards. In such case, it devolved upon the complainants to prove, with legal certainty, the amount of timber, cut subsequent to their purchase from the state. It is true that the bill sought an accounting, but in presenting the case the complainants proceeded to prove specifically the number of trees cut, the kind and value of the same. Had the complainants established title to the accretions, it is probable that the chancellor would have found this proof sufficient to render a judgment for the complainants, but, as the complainants did not establish this right to the accretions to lands owned by them prior to October 1st, and did not establish the number of trees cut and the value of same after such land was purchased from the state, and did not insist upon an accounting at the end of the trial, and did not propound interrogatories to the nonresident, Hunter, as they might have done under section 1661, Hemingway's 1927 Code (section 1928, Code of 1906), we do not think they are entitled, on appeal, to insist upon an accounting in the present state of the record. The complainants seem to have been able to prove the number and kind of trees cut, but failed to prove the date of the

cutting prior to October 1, 1924, and subsequent thereto, and failed to establish the accretions, as above stated to its own lands, or that it owned the land which it purchased from the state October 1, 1924, or prior to that date.

We are unable to find, therefore, any reversible error, and the judgment of the court below will be affirmed.

*Affirmed.*

