Henritzy *v.* Harrison County.

(Division B. Jan. 24, 1938.)

[178 So. 322. No. 33088.]

**J. L. Taylor**, of Gulfport, for appellant.

George R. Smith, of Pass Christian, for appellee.

Gardner & Backstrom, of Gulfport, for appellee.

686

Argued orally by **J. L. Taylor**, for appellant, and by **Geo. R. Smith** and **Oscar Backstrom**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee filed its bill and supplemental bill in the chancery court of Harrison County against appellant, praying for a mandatory injunction to compel appellant to remove a concrete, flat structure from the right of way climbed by appellee as an easement for sea wall and road protection purposes. The trial was had on the pleadings and agreed facts, resulting in a decree in appellee's favor. From that decree appellant prosecutes this appeal.

The facts are undisputed; they are set out in the original and supplemental bills and admissions of the answer and in the agreed facts. In stating the case we will follow closely the statement by appellee's counsel which is in accord with the facts.

Before the approval of chapter 319, Laws 1924, a public highway of the state ran along and adjacent to the shore line of the Mississippi Sound, a body of tidewater entirely across the south side of Harrison County. This roadway is known as United States highway No. 90. For many years prior to the adoption of the statute referred to this highway, on different occasions, suffered heavy damage from tropical storms which also damaged the shore line and adjacent property. This adjoining property was the most valuable in Harrison county. After the adoption of the statute, the board of supervisors of the county adjudicated that this highway was exposed or subject to and was in danger of much damage by water driven across it by shore storms; that it was not protected by any sea wall; and that it was necessary that it be protected under the provisions of chapter 319, Laws 1924. The board ordered that such adjudication of the conditions be certified to the Governor of the State, which was done. The Governor thereupon

appointed five suitable freeholders of the county to be known and serve as a road protection commission with authority, in conjunction with the board of supervisors, to determine the character of road protection required. The commission met, organized and appointed one Shaw as engineer, which appointment was approved by the board of supervisors. The engineer made surveys, plans, specifications, and estimates of the cost of the necessary structure, which were approved by the road protection commission, and was reported to and filed with the board of supervisors, which duly approved and adopted the same. Thereupon the board of supervisors ordered an election to determine whether bonds of the county should be issued and sold to provide the necessary funds with which to carry out the plans and specifications. An election was accordingly held, and carried in favor of the bond issue, which bonds were thereupon issued and sold.

By the survey the right of way was located and staked out, and on April 7, 1925, the board of supervisors entered an order condemning the land so surveyed and staked out for road protection. Thereafter the road protection commission made publication in a newspaper published in Harrison county, as authorized by chapter 319, Laws 1924, advising all owners of the land so surveyed and staked out for right of way purposes that, if they desired to claim compensation for the land so taken or damaged by the proposed road protection construction, their claims therefor should be filed with the board of supervisors within thirty days after June 29, 1925. The road protection commission filed with the board of supervisors proof of publication of such notice, which showed that it was dated May 28, 1925, and fixed June 29th of the same year as the date from which the thirty days provided for filing claims for damages should be reckoned. Statutory requirements in other respects were complied with. The notice was published in the Coast Beacon on June 13, 20, 27, and July 4, 1925. The board of supervisors at its regular meeting in September there-.

after adjudicated that the notice had been published in all respects as required by the statute, and entered an order on its minutes adjudicating that the land situated in the surveyed right of way had been legally and finally condemned as a right of way for road protection purposes. The right of way sought to be condemned is 50 feet in width and traverses the most densely populated section of Harrison county. The land adjoining it on the north is composed largely of building lots facing the Mississippi Sound. The right of way extends along the shore of the sound for a distance of approximately 26 miles. After the condemnation proceedings had been completed, the county entered into the actual possession of the strip of land, including that involved in this case, and constructed on the south 15 feet thereof a concrete sea wall, after the completion of which an earthen fill was made back of and to the north of the sea wall on the remaining 35 feet of the right of way so sought to be condemned. The sea wall, and earthen fill have been maintained and kept in repair by the county until the present time. The 35 feet north of the sea wall is necessary for the proper maintenance of the sea wall; it is necessary to maintain thereon an earthen fill to prevent washouts and the undermining of the sea wall; also for a right of way to enable the county to reach the sea wall and repair it when repairs are needed. This 35-foot strip has been continuously used and occupied for more than ten consecutive years prior to the bringing of this suit.

At the time of the condemnation proceedings, as well as at the time of the construction of the sea wall, the land here involved was owned by Judge Kimbrough who, in addition to the notice by publication referred to, also had actual notice of the construction of the sea wall and the earthen fill, and claimed no damages or compensation therefor. Appellant acquired the strip of land involved in the year 1936, succeeding to the title, if any, formerly owned by Judge Kimbrough. Recently

appellant erected on the 35-foot strip a concrete structure which will interfere with the rights of the county. The county now desires to use the 35-foot strip for the purpose of building a concrete or other hard-surface apron or slab thereon, capable of being used as an additional public road and also for adding strength and stability to the sea wall structure, and also for the protection of the present existing highway. This plan is in accordance with the original purpose of the condemnation of the 50-foot strip. It could not be put into execution at that time because it was necessary that the earthen fill be allowed to settle in order to afford a firm foundation for the additional road protection then contemplated, and further because the financial affairs of the county did not justify the necessary expenditure for that purpose. The earthen fill is now settled so as to afford a firm foundation for the additional road and road protection then contemplated. The county is now financially able to put its original plan into execution.

The questions involved are whether the statute is violative of section 17 of the Constitution; of section 170 of the Constitution; whether the publication of the notice to property owners in the condemnation proceeding complied with the statute; if the condemnation proceedings were void, nevertheless, whether the county acquired title to the strip of land by adverse possession; and, if void, whether appellant is barred from any damages he might have been entitled to by the statute of limitations.

The chancellor in his opinion, which is made a part of the record, disposes specifically of all the questions involved except whether the publication of the notice was sufficient, and whether the statute violated section 170 of the Constitution. We do not think we could do better than to adopt his opinion as that of the court so far as it goes. The opinion deals first with section 17 of the Constitution:

"As authority to sustain his position, counsel for de-

fendant relies mainly on Levee Commissioners v. Dancy, 65 Miss. 335, 3 So. 568, wherein it was held that, as a condition precedent to taking private property under condemnation proceedings, compensation must first be made to the owner of said property; and that the owner cannot be required to initiate proceedings to secure his compensation. But it will be noted from reading the opinion that the court differentiated between the case of a private corporation seeking to take property by condemnation proceedings and a proceeding by the State, or one of its subdivisions, this appearing in the open statement of the court:

" 'In this state, "due compensation first being made" is a precedent condition of the appropriation of private property for public use; and whatever may be allowable "where the state or any of its subdivisions is concerned in the appropriation," as held in Cage v. Trager, 60 Miss. 563, it is not true that the owner may be paid the price of his property by a requirement that he shall initiate proceedings for compensation against a corporation which is not the state or one of its subdivisions, and against which it is said and truly, no personal judgment can be rendered, but only an award of a sum of money, without execution to enforce it.'

"In support of their contention that chapter 319 of the Laws of 1924 is constitutional, including section 5 thereof, which provides that publication may be made to the owners of lands sought to be condemned for such 'right of way as is here involved for thirty days in a newspaper, requiring that said owners shall make and file whatever claim they may desire to make as compensation for such right of way, etc., counsel for complainant cite numerous authorities, relying chiefly on Stewart v. Board of Police of Hinds County, 25 Miss. 479; Cage v. Trager, 60 Miss. 563, and Hinds County v. Johnson, 133 Miss. 591, 98 So. 95, 96.

"In the Stewart Case, which was a condemnation proceeding instituted by Hinds County for the purpose of

condemning a right of way for use as a public highway, the court said:

"'We consider the proceedings of the boards of police in this State, condemning lands to be used as public highways, strictly proceedings in rem, and that the orders made by them in relation thereto, are to be governed by the rules and principles applicable to such cases. Such was evidently the intention of the legislature, as it has not made any provision on the subject of notice, nor directed any manner in which it shall be given. The whole community is vitally interested in the efficient exercise, by the boards of police, of the jurisdiction on the subject of roads conferred upon those tribunals by the constitution and laws. The jurisdiction conferred upon them is of a peculiar character, in which every citizen is interested. The subject-matter on which they act, is of a public nature, independent of private parties. The judgments rendered by them act upon the thing itself, which is condemned to the use of the public, and we believe the public interests imperatively require that the orders made by them, when made pursuant to the statutes, should conclude the whole world, whether actual notice was given or not to the parties interested in the premises. It is manifest, that actual notice could not be given in many instances, as it cannot be presumed that the boards of police could know, in all cases, in whom the title was vested to every tract of land in the county necessary to be condemned for public roads, and under such circumstances to declare that these orders of condemnation without this notice are not valid and obligatory, would produce a degree of public inconvenience which nothing would justify, unless the rules of law demanded it. But we do not believe such to be the law. On the contrary, we believe the present case strictly a proceeding in rem, in which the order of the court is conclusive, whether the party had notice of the proceeding or not.'

"In the Stewart Case the point was made by the own-

er of the land that he could not be bound by the condemnation proceeding without being first personally served with notice, he being a resident of the State. But the court held that notice in such cases may be either actual or constructive, and particularly so in a case like this which is a proceeding in rem, and not in personam. This was a case of first impression, but the rule there announced has never been overruled or modified.

"The case of Hinds County v. Johnson, supra, is squarely in point and disposes of the question raised as to the constitutionality of the act involved, and particularly section 5 thereof. This was a proceeding by Hinds county to condemn a right of way for public highway over lands belonging to the appellee. The proceeding was instituted under the statutory provisions substantially similar to those here involved. There the court said:

" 'In making the proposed change in said public highway the county complied strictly with the provisions of the above statute [sections 4400 to 4402, inclusive, Code 1906]. In determining the question of the constitutionality of said statute, the following principles of construction should be borne in mind: That all doubts as to its constitutionality will be resolved in its favor. The court must be convinced beyond a reasonable doubt of the unconstitutionality of the statute, and, where two different interpretations are possible, that which will uphold its validity should be adopted'—citing numerous authorities.

"The court makes this further observation:

" 'Are the state and its political subdivisions barred by section 17 of the Constitution from taking property for public use without making compensation in advance therefor, in the sense that the owner must first be paid or tendered in actual currency of the government the damages he has suffered? Clearly, under decisions of this court, that is the rule where property is taken for public use by others than the state or some political sub-

division thereof. We think this question was answered in the negative by Cage v. Trager, 60 Miss. 563. It was distinctly held in that case that the state, or any political subdivision thereof, seeking to condemn land for public use, might occupy and use the land in advance of actual payment therefor, and that where notice was given the owner, and a fair opportunity afforded him to propound his claim for compensation, there was no constitutional objection to the requirement that the duty should be upon the owner to take the initiative and propound his claim.'

"There follows this further observation by the court:

" 'The requirement of compensation in advance was to insure payment to the owner. It was in the nature of a guaranty against insolvency of the taker of his land. It was to relieve him of the uncertainties and exigencies of an ordinary unpaid claim, subject to be reduced to judgment, resulting in a nulla bona execution. These reasons can have no application or force to the taking of private property for public use by the state or any of its political subdivisions. There can be no personal judgment against the taker enforceable by execution. The taking in such a case means that the entire faith and credit and taxing power of the political body exercising the right is pledged to make the owner due compensation when ascertained.'

"In disposing of the Dancy Case, relied on here by defendant, the court has this to say:

" 'Appellee relies upon the case of Levee Commissioners v. Dancy, 65 Miss. 335, 3 So. 568. It will be observed in the first place that that case neither overruled nor modified the principle laid down in Cage v. Trager, supra. On the contrary, it expressly recognized the principle here invoked by stating what was decided in Cage v. Trager, and distinguishing it from the Dancy Case. The difference in the two cases is simply this: In the Cage-Trager Case there was a taking of property by a political subdivision of the state, while in the Dancy

Case the board of levee commissioners for the Yazoo-Mississippi Delta was treated as a private corporation and not a political subdivision of the state. And the court held therefore that the principle applying to the state and its political subdivisions had no application, and the owner had to be compensated before the taking of his property, and the statute there involved requiring him to make claim for his compensation and limiting the time of its making was void.'

"It seems, therefore, unnecessary to refer to additional authority to establish the constitutionality of the provisions of chapter 319 governing the condemnation of the right of way involved.

"It has been argued in support of the contention that the act is unconstitutional that it deprives the owner of the land of the right of a trial by jury in condemnation proceedings. The answer to that argument is found in section 6 of the said chapter and which provides for a review by the circuit court of the condemnation proceedings, including the right of a jury to assess the damages.

"The bill of complaint, not to say the agreement of counsel on file, establishes title in the county to the said right of way under our ten-year adverse possession statute. Code 1930, section 2287. A right of way, definitely described and identified by physical markings, has been claimed, occupied, and used publicly continuously by the county authorities for more than ten years prior to the filing of the bill of complaint, and, in fact, prior to the acquisition of title by the defendant. The south 15 feet of the right of way has been occupied by the sea wall proper, and this within itself, under the evidence as reflected by the agreed statement of facts, would clearly extend the claim and occupancy to the calls of the northern boundary of the 50-foot right of way as color of title.

"But it is claimed by the defendant that in any event, he is entitled to recover damages for the taking of his property to the amount of at least $250 notwithstanding the fact that no claim for damages was filed within

the time required, to-wit, within thirty days after the giving of the published notice, nor at any other time. This position, however, is likewise untenable, for the reason, first, that if the governing act is constitutional, as we hold it to be, the then owner of the property waived his right to recover damages by failing to make claim for same within the time and in the manner provided by the act. In the second place, the claim is barred by the statute of limitations, as against the owner at the time of the condemnation, and those claiming under him. In the third place, there is nothing in this record to evidence or indicate that the defendant acquired by assignment, either by contract or law, the right of Judge Kimbrough to sue for and recover damages on account of the taking of said property for right of way purposes.'' The purchaser of land takes it without any right of action for former trespasses. Blodgett v. Seals, 78 Miss. 522, 29 So. 852; Leavenworth v. Hunter, 150 Miss. 750, 117 So. 122; Masonite Corporation v. Burnham, 164 Miss. 840, 146 So. 292, 91 A. L. R. 752.

Section 170 of the Constitution provides, among other things, that the boards of supervisors ''shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe.'' The argument that chapter 319 of the Laws of 1924 takes away and confers on the road protection commission any of the authority of the boards of supervisors over roads, bridges, and ferries is without merit. The road protection commission was authorized to act alone in a ministerial and advisory capacity toward the board of supervisors—all of its acts involving judgment and discretion were made subject to the approval of the board of supervisors; in other words, they were made finally the acts and judgments of the board of supervisors.

With reference to the publication of the notice: It was published in a newspaper weekly for four consecutive weeks. Judge Kimbrough, the owner of the property

at that time, neither made claim to damages for its taking within thirty days after the time fixed in the notice, or within thirty days after the last publication of the notice. The requirement of a given number of days' publication of a notice has been quite uniformly held not to contemplate a daily printing of the notice. It is stated in the notes to Southworth v. Glasgow, 232 Mo. 108, 132 S. W. 1168, Ann. Cas. 1912B, 1267, that it had been so held by the courts of Georgia, Idaho, Illinois, Indiana, Iowa, and Maryland.

We are of the opinion that the statute was complied with in the publication of the notice. The property owners were charged with notice of the requirements of the statute; they could not have been misled as to when they were required to file claim for damages.

Affirmed.