# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01306-SCT

*RUSSELL REAL PROPERTY SERVICES, LLC*

*v.*

*THE STATE OF MISSISSIPPI, BY AND THROUGH DELBERT HOSEMANN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE AND TRUSTEE OF THE PUBLIC TIDELANDS TRUST, AND THE CITY OF PASS CHRISTIAN, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2015 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL ADELMAN |
| ATTORNEYS FOR APPELLEES: | JONATHAN PAUL DYAL |
| | KARL CRAWFORD HIGHTOWER |
| | MALCOLM F. JONES |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LEE DAVIS THAMES, JR. |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/15/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     On August 18, 2015, the Harrison County Circuit Court granted the State of Mississippi ("the State") and the City of Pass Christian's ("the City") motions for summary judgment. Concluding that Russell Real Property ("Russell RP") lacked standing to pursue

its claim of inverse condemnation, the circuit court dismissed without prejudice its claim of inverse condemnation. Russell RP appeals, and we affirm.

**FACTS**

¶2.     On September 24, 2010, the State and the City entered into a forty-year lease.  Under the terms of the lease, the City would use a portion of the Harrison County shoreline as a harbor and pursue related commercial development.  Russell RP Services, LLC, filed its complaint against the State and the City on November 21, 2013.  Russell RP asserted that it held an undivided one-half interest in a parcel of land lying between U.S. 90 and the Gulf of Mexico shoreline, and that the City and State, by executing the aforementioned lease, had effectuated a taking upon its property which required just due compensation.

¶3.     The parcel of property is described in a chain of deeds and surveys that originate in a 1984 deed.  First, the 1984 deed conveyed an undisputed parcel of real estate lying north of U.S. Highway 90. Then, the deed continued:

> For the consideration aforesaid there is also hereby conveyed by the aforesaid seven Grantors to the aforesaid Grantees all right, title and interest, **if any**, presently owned or held by the undersigned Grantors in and to the real estate lying between the south boundary of the aforedescribed real estate and the water's edge of the Mississippi Sound or other body of water immediately south of the aforedescribed real estate and lying between the southward projections of the east and west property lines of the aforedescribed real estate. *The conveyance of such rights south of U.S. Highway 90 is without warranty of any kind*.  (Emphasis added.)

The disputed property currently constitutes a portion of the Pass Christian Harbor parking lot.

¶4. A sequence of quitclaim deeds executed in 1991, 1992, and 2004 conveyed interests in the disputed property south of Highway 90 to various individuals who are not parties to the instant case. In 2007, via a quitclaim deed, the Russell Ellis Irrevocable Trust ("the Ellis Trust") purportedly received a one-half interest in the disputed property. On November 22, 2010, after the City and State entered into the forty-year lease, the Ellis Trust conveyed to Russell RP its one-half interest in the property through a quitclaim deed. All of the quitclaim deeds produced as evidence of Russell RP's chain of title incorporated by reference the 1984 deed, quoted *supra*, to describe the borders of the disputed property.

¶5. Russell RP filed its complaint for inverse condemnation on November 21, 2013. Russell RP moved for partial summary judgment and renewed its motion for summary judgment, but the trial court never held a hearing on the motions. The State moved for summary judgment on May 15, 2015, arguing that Russell RP lacked standing to pursue a claim of inverse condemnation. The Circuit Court of Harrison County heard argument on the State's motion on July 30, 2015, and issued its final judgment on August 18, 2015, dismissing Russell RP's complaint for lack of standing.

¶6. Russell RP appeals. Discerning no error, we affirm.

## ANALYSIS

¶7. The Court reviews the grant or denial of a motion for summary judgment de novo. *Young v. Smith*, 67 So. 3d 732, 741 (Miss. 2001) (citations omitted). The moving party carries the burden of demonstrating to the Court that no genuine issue of material fact exists, and the Court views the evidence in the light most favorable to the party opposing the

3

motion. ***Hosemann v. Harris***, 163 So. 3d 263, 267 (¶ 9) (Miss. 2015). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ***Id.*** (citations omitted).

¶8. The trial court stated that

> Russell [RP] takes the position that it owns the property at issue. It is undisputed that at the time of the alleged taking for purposes of inverse condemnation, [Russell RP] was not the owner of the property at issue. As a result, [Russell RP] does not have standing to pursue a claim against either the [Secretary of State] or Pass Christian.

"It is well settled that Mississippi's standing requirements are quite liberal." ***State v. Quitman County***, 807 So. 2d 401, 405 (¶ 11) (Miss. 2001). A party has standing to sue "when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law." ***Id.*** As standing is a jurisdictional issue, it may be raised by any party or by the Court at any time. ***DeSoto Times Today v. Memphis Publ'g Co.***, 991 So. 2d 609, 611 (¶ 6) (Miss. 2008) (quoting ***City of Madison v. Bryan***, 763 So. 2d 162, 166 (¶ 20) (Miss. 2000)).

¶9. First, "[t]o have standing, this Court has stated, there must be a present, existent actionable title or interest which must be completed at the time the cause of action is filed." ***Kirk v. Pope***, 973 So. 2d 981, 989 (¶ 23) (Miss. 2007) (quoting ***City of Madison***, 763 So. 2d at 165 (¶ 16)) (internal quotations removed). The State and the City executed the forty-year lease on September 24, 2010, but the Ellis Trust did not execute a quitclaim deed purporting to convey its one-half interest in the subject property to Russell RP until November 22, 2010.

4

Because Russell RP argues that the taking occurred on September 24, 2010, when the Secretary of State signed the lease, the Ellis Trust, and not Russell RP, purportedly possessed the one-half interest in the disputed property at that time. The Ellis Trust has never been a party to the instant litigation. Further, the quitclaim deed transferring the property to Russell RP did not contain language conveying a transfer of a cause of action. The Court of Appeals has stated that "[u]nder the doctrine of 'prior trespass,' the deed to land does not implicitly convey any right of action for trespasses or property damage that occurred prior to the transaction." *Flowers v. McCraw*, 792 So. 2d 339, 342 (¶ 9) (Miss. Ct. App. 2001) (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 169 (Miss. 1999)). Without an explicit conveyance of a cause of action, the courts presume that no such conveyance occurred. *Id.* (¶¶ 7-9); *see also* *Patterson v. Holleman*, 917 So. 2d 125 (Miss. Ct. App. 2005); *Henritzy v. Harrison Co.*, 180 Miss. 675, 178 So. 322 (1938); *Thompson v. City of Philadelphia*, 180 Miss. 190, 177 So. 39 (1937); *J.H. Leavenworth & Son v. Hunter*, 150 Miss. 750, 117 So. 122 (1928). The presumption is rebuttable, but Russell RP has not provided any evidence that the cause of action owned by the Ellis Trust was ever assigned or sold to Russell RP. Russell RP's assignment of error on the instant point is without merit.

¶10.    Second, though admitting that it did not own the property on the date that the City and State executed the lease, Russell RP goes on to argue, without citation to authority, that the alleged taking is "ongoing," or that the taking reoccurred when it received the one-half interest in the property from the Ellis Trust. It is the duty of the briefing party to cite to authority which supports its argument. Miss. R. App. P. 28(a)(6). The Court "considers

5

assertions of error not supported by citation or authority to be abandoned." ***McNeil v. Hester***, 753 So. 2d 1057, 1075 (¶ 65) (Miss. 2000). Because Russell RP failed to cite authority, the assignments of error are without merit.

¶11. Third, Russell RP argues that its chain of quitclaim deeds conveys riparian and littoral rights, and even if it did not own an interest in the disputed property on the date of the lease's execution, current possession of the riparian and littoral rights confers standing upon it. Russell mistakes the law on riparian and littoral rights, as the Court has addressed the compensation, *vel non*, following an alleged "taking" of shoreline property.

> Riparian/littoral rights are codified in Miss. Code Ann. § 49-15-9 (1972). These rights include the right to plant and gather oysters, construct bath houses, piers, and other structures in front of any land bordering on the Gulf of Mexico or Mississippi Sound.
>
> This Court has held that these rights are not property rights, per se; instead they are mere licenses or privileges. ***Catchot v. Zeigler***, 92 Miss. 191, 45 So. 707 (1908). Furthermore, these licenses are revocable. ***Crary v. State Highway Commission***, 219 Miss. 284, 68 So. 2d 468 (1953).

***Miss. State Highway Comm'n v. Gilich***, 609 So. 2d 367, 375 (Miss. 1992). *See also* ***Watts v. Lawrence***, 703 So. 2d 236, 238 (Miss. 1997) (citing ***Gilich*** and interpreting Section 45-15-9: "This statute actually addresses the distance a property owner's littoral rights reach, not who has littoral rights.") Because riparian and littoral rights are not "real estate," ***Catchot***, 45 So. at 707, but revocable licenses, Russell RP may not gain standing for an action of inverse condemnation from an allegation of their infringement. The instant assignment of error is without merit.

¶12. Finally, both Russell RP and the State engage in extensive argument as to who owns the property as a matter of law. Russell RP relies on its chain of quitclaim deeds to establish ownership of the property and requests that the Court hold that it owns the property. The State replies that the property, as part of the Pass Christian Harbor, and as property south of the Harrison County seawall, is owned by the State as Public Trust Tidelands Property. The trial court below dismissed the case only on the grounds of standing and made no findings of facts or conclusions of law pertaining to the ownership of the property. We, too, have been able to review the facts and law at issue and render a decision solely on the grounds of standing. Therefore, we decline to address the merits of the instant assignment of error.

## CONCLUSION

¶13. Russell RP concedes that it did not own the disputed property on September 24, 2010, the date that the Secretary of State approved and executed the forty-year lease between the State and the City. Russell RP has failed to provide the Court with any authority to support its argument that it has received standing from the November 22, 2010, conveyance of the one-half interest in the disputed property. Because littoral rights are revocable privileges of beachside enjoyment, and not property rights, Russell RP may not gain standing for an action of inverse condemnation from their alleged infringement. We decline to determine the ownership of the disputed parcel. The trial court did not err in finding that Russell RP lacked standing to bring an action for inverse condemnation against the State, or in granting summary judgment to the State. Therefore, we affirm the trial court's judgment.

¶14. **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, KING, MAXWELL AND BEAM, JJ., CONCUR. RANDOLPH, P.J., NOT PARTICIPATING.**