ISHEE, JUSTICE, FOR THE COURT:
 

 ¶1. Rex Distributing Company was a wholesaler of Anheuser-Busch's beer. When Rex sought to sell its business, Anheuser-Busch asserted a contractual right to "redirect" the sale to its preferred buyer, Mitchell Distributing Company. Rex alleges that the redirect provision was void under Mississippi's Beer Industry Fair Dealing Act (BIFDA) and that Anheuser-Busch's interference with the sale caused it damages actionable under the same statute. The trial court dismissed Rex's claims against Anheuser-Busch and Mitchell for failure to state a claim upon which relief can be granted.
 

 ¶2. We conclude that Rex alleged a valid cause of action, so we reverse the dismissal of Rex's BIFDA claim against Anheuser-Busch and the derivative claims against Mitchell. We affirm the trial court's judgment dismissing Rex's other claims.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶3. This is an interlocutory appeal from a dismissal under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The following facts are drawn from Rex's complaint and, for our purposes, must be accepted as true.
 
 See
 

 Pryer v. Gardner
 
 ,
 
 247 So.3d 1245
 
 , 1250 (Miss. 2018).
 

 ¶4. Like most states, Mississippi generally requires a three-tier distribution system for beer. The supplier makes the beer, the wholesaler distributes it, and the
 retailer sells it to the public.
 
 See
 
 Miss. Code. Ann. §§ 67-3-45 to - 46 (Rev. 2012);
 
 see generally
 
 Brian D. Anhalt,
 
 Crafting a Model State Law for Today's Beer Industry
 
 ,
 
 21 Roger Williams U. L. Rev. 162
 
 , 171-73 (2016). The Mississippi Beer Industry Fair Dealing Act (BIFDA) further regulates the relationships between beer suppliers, wholesalers, and retailers, specifying things each can and cannot do.
 
 See
 

 Miss. Code Ann. §§ 67-7-1
 
 to -23 (Rev. 2012). Our beer laws are similar to the general franchise laws present in many states.
 
 See
 
 Anhalt,
 
 supra
 
 , at 163-64.
 

 ¶5. Rex was a beer distributor/wholesaler. Anheuser-Busch is the largest beer supplier in the country. Rex had a longstanding position as Anheuser-Busch's exclusive distributor for a swath of the Mississippi Gulf Coast. The distribution contract between the two gave Anheuser-Busch a right of first refusal if Rex were sold-"at the price and on the terms and conditions applicable"-and the right to assign the sale to a third-party purchaser of Anheuser-Busch's choosing. The parties call this a right to "match and redirect" the sale.
 

 ¶6. When Rex attempted to sell, the high bidder was another nearby distributor, Adams Beverages, Inc. The sale contract (called the Asset Purchase Agreement or APA) provided that the price would be determined by each individual distribution contract Rex successfully transferred to Adams. This depended on the approval of each of the suppliers Rex distributed for-but under Mississippi law, the suppliers' consent "shall not be withheld or unreasonably delayed to a proposed transferee who meets [certain] nondiscriminatory, material and reasonable qualifications and standards."
 
 Miss. Code Ann. § 67-7-13
 
 (1) (Rev. 2012).
 

 ¶7. Two days before Rex's sale to Adams was to close, Anheuser-Busch informed Rex it was exercising a right under the distribution contract to "match and redirect" the sale of Rex to Mitchell Distributing Company, Inc., another local distributor. According to Rex's complaint, this eleventh-hour interference turned out to be part of a continuing scheme by Anheuser-Busch to manipulate its distributors. Anheuser-Busch had recently tried to convince its Mississippi distributors not to sell beer from one of its competitors, Yuengling and Son, but it had been mostly unsuccessful; Mitchell had been the only Anheuser-Busch distributor to spurn Yuengling at Anheuser-Busch's request.
 
 [1]
 
 Rex alleged Anheuser-Busch asserted the match-and-redirect claim to reward Mitchell and simultaneously to punish Rex for selling a competitor's beer, since under the terms of the sale contract, Rex bore the risk its other suppliers would refuse the transfer of its distribution rights to the new purchaser. That is what Rex alleged Yuengling ultimately did when Rex acceded to Anheuser-Busch's demand, costing Rex $ 3.1 million and leading to this lawsuit.
 

 ¶8. Rex sued Anheuser-Busch, Mitchell, and Yuengling. Rex accused Anheuser-Busch and Mitchell of common-law tortious interference with contract and civil conspiracy. It also alleged that Anheuser-Busch's exercise of the match-and-redirect provision violated the Mississippi Beer Industry Fair Dealing Act and Anheuser-Busch breached its contract with Rex by failing to ensure Rex received the same price it would have had Anheuser-Busch not redirected the sale. The trial court dismissed all these counts for failure to state a claim under Rule 12(b)(6). Finally,
 Rex alleged Yuengling had violated BIFDA by refusing the proposed transfer to Mitchell of Rex's Yuengling distribution rights. This claim survived the motion to dismiss and remains pending in the trial court. This Court granted Rex's petitions for interlocutory appeal from the judgments dismissing its claims against Anheuser-Busch and Mitchell, and the appeals have been consolidated.
 

 DISCUSSION
 

 1. Beer Industry Fair Dealing Act, Mississippi Code Section 67-7-13
 

 ¶9. The Mississippi Beer Industry Fair Dealing Act (BIFDA) provides in part that a supplier "shall not interfere with, prevent or unreasonably delay the transfer of the wholesaler's business" so long as the proposed transferee "meets such nondiscriminatory, material and reasonable qualifications and standards required by the supplier for similarly situated wholesalers."
 
 Miss. Code Ann. § 67-7-13
 
 (2) (Rev. 2012). In relevant part, the statute further permits the supplier to refuse to accept the transfer only "in good faith and for good cause related to the reasonable qualifications" of the transferee.
 

 Id.
 

 ¶10. At the outset, we observe that we are reviewing the granting of a motion to dismiss for failure to state a claim under Mississippi Rule of Civil Procedure 12(b)(6). At this stage in the litigation, the allegations of Rex's complaint must be accepted as true.
 
 See
 

 Pryer v. Gardner
 
 ,
 
 247 So.3d 1245
 
 , 1250 (Miss. 2018). Thus we are required to credit the allegations in the complaint that the original proposed transferee, Adams, was reasonably qualified and that Anheuser-Busch lacked good cause to refuse to accept the transfer to Adams.
 

 ¶11. BIFDA further provides that wholesalers may not waive its protections: "[a] wholesaler may not waive any of the rights granted in any provision of this chapter and the provisions of any agreement which would have such an effect shall be null and void."
 
 Miss. Code Ann. § 67-7-17
 
 (Rev. 2012).
 

 ¶12. Rex alleges BIFDA rendered the "match and redirect" contract provision void and that Anheuser-Busch's demand violated Section 67-7-13(2) by "preventing" or "interfering with" the transfer of its business. Anheuser-Busch responds that it did not violate Section 67-7-13(2) because Rex's business was transferred-just not to the company to which Rex wanted it transferred. The trial court found this reasoning persuasive and dismissed Rex's BIFDA claim.
 

 ¶13. The interpretation of a statute is a question of law, and the standard of review on appeal is de novo.
 
 Natchez Hosp. Co. LLC v. Adams Cty. Bd. of Supervisors
 
 ,
 
 238 So.3d 1162
 
 , 1163 (Miss. 2018). This Court has never interpreted Section 67-7-13(2), and we are not aware of any decisions interpreting similar provisions found in the law of some other states.
 
 [2]
 
 Nor have the parties cited any outside authorities, either by courts or commentators. We consider this to be a matter of first impression.
 

 ¶14. That being said, Anheuser-Busch's stepping in to insist Rex sell its business to someone else amounted to "preventing" the proposed transfer under any definition of the word. Anheuser-Busch likewise "interfered" with the proposed transfer. The only conceivable definition of the word "interfere" that might not apply would be if it had been used as a
 term of art referring to common-law tortious interference with contract, which has not been argued by any of the parties to this appeal. Reading "interfere" as a term of art would contradict the oft-cited (and statutorily mandated) rule of statutory interpretation that nontechnical "[w]ords contained in statutes are to be interpreted 'according to their common and ordinary acceptation and meaning.' "
 
 Alfonso v. Diamondhead Fire Prot.
 
 ,
 
 122 So.3d 54
 
 , 56 (Miss. 2013) (quoting
 
 Miss. Code Ann. § 1-3-65
 
 (Rev. 2005)). BIFDA defines seventeen different terms, but "interfere" is not one of them.
 
 See
 

 Miss. Code Ann. § 67-7-5
 
 (Rev. 2012). We observe, also, that it is impossible for a supplier like Anheuser-Busch to tortiously interfere with the sale of its distribution rights, because the supplier is a party to the contract for the sale of its distribution rights.
 
 See
 

 Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.
 
 ,
 
 611 So.2d 238
 
 , 247 (Ala. 1992) (interpreting a similar agreement to the one in the instant case);
 
 see also
 

 Genet Co. v. Annheuser-Busch, Inc.
 
 ,
 
 498 So.2d 683
 
 , 684 (Fla. Dist. Ct. App. 1986) (likewise). "A party to a contract cannot be liable for tortious interference with the same contract."
 
 Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A.
 
 ,
 
 910 So.2d 1093
 
 , 1098 n.3 (Miss. 2005) (citing
 
 Par Indus., Inc. v. Target Container Corp.
 
 ,
 
 708 So.2d 44
 
 , 48 (Miss. 1998) ). "[T]he wrongdoer [must be] a 'stranger' to the contract which was interfered with-an outsider."
 
 Cenac v. Murry
 
 ,
 
 609 So.2d 1257
 
 , 1269 (Miss. 1992). If "interfere" meant "tortious interference with contract," as the separate opinion contends it should, the statute would prohibit something that is already impossible, and it would offer distributors no protection whatsoever from unjustified interference.
 

 ¶15. We also note that Section 67-7-13(2) further protects a distributor's right to pass on her business to specific people after her death, i.e., designated members.
 
 [3]
 
 It reads, in its entirety,
 

 The supplier shall not interfere with, prevent or unreasonably delay the transfer of the wholesaler's business, including an assignment of wholesaler's rights under the agreement, if the proposed transferee is a designated member, or if the transferee other than a designated member meets such nondiscriminatory, material and reasonable qualifications and standards required by the supplier for similarly situated wholesalers. Where the transferee is other than a designated member, the supplier may in good faith and for good cause related to the reasonable qualifications refuse to accept the transfer of the wholesaler's business or the assignment of the wholesaler's rights under the agreement.
 

 Miss. Code. Ann. § 67-7-13(2) (Rev. 2012). Were we to accept Anheuser-Busch's reading of the statute, that there has been no
 interference with
 
 the
 
 transfer as long as
 
 a
 
 transfer happens, the same interpretation should apply to transfers to designated members. That would permit an end-run around the statute's protections for designated members.
 

 ¶16. Any remaining doubt can be removed by considering the purpose Section 67-7-13(2) serves within Mississippi's regulation of the beer industry. BIFDA was expressly intended to "maintain stability and healthy competition in the light wine and beer industry in this state." Miss. Code. Ann. § 67-7-3(a) (Rev. 2012). Mississippi law requires separation between manufacturers and distributors; a manufacturer (and its officers, agents, employees, and affiliates) is not permitted to have "any interest in the license, business, assets or corporate stock of a wholesaler or distributor ...." Miss. Code. Ann. § 67-3-46(2) (Rev. 2012). Allowing a manufacturer to choose the owners of its wholesalers in perpetuity would undermine the statutory separation of the beer industry into three tiers.
 

 ¶17. We conclude that Rex has alleged a claim upon which relief can be granted: BIFDA rendered the match-and-redirect provision null and void, and Anheuser-Busch's demands premised on the void provision may have amounted to unjustified "interference" with Rex's transfer to Adams, an allegedly qualified transferee. BIFDA expressly provides a remedy for damages resulting from violations of its protections.
 
 Miss. Code Ann. § 67-7-15
 
 (Rev. 2012). The circuit court's dismissal for failure to state a claim is reversed.
 

 2. Breach of Contract-Anheuser-Busch
 

 ¶18. Rex also claimed that Anheuser-Busch breached its contract with Rex, which Rex contends required Anheuser-Busch to ensure Rex received "the same price, net of taxes, [Rex] would have received from the disapproved purchaser." We have held that under BIFDA the "provisions [of the contract between Anheuser-Busch and Rex] which would have [the] effect [of permitting interference with the transfer of Anheuser-Busch's distribution rights are] null and void."
 
 Miss. Code Ann. § 67-7-17
 
 (Rev. 2012). But it is not clear that the statute also nullifies Anheuser-Busch's obligation to pay for the transfer of the rights, and the contract between Anheuser-Busch and Rex includes an explicit severability clause. The enforceability question has not been raised as an issue on appeal by the parties. And we ultimately conclude that Rex has failed to state a claim for breach of contract, so the question of enforceability is moot and will not be addressed.
 

 ¶19. The full provision at issue, Paragraph 4(b)(v), states,
 

 If Anheuser-Busch disapproves a proposed owner in Wholesaler's business solely because of (A) concern with the resulting Territory configuration or (B) market combinations to achieve economies of scale or enhanced sales opportunities, and if a sale is eventually completed to a party preferred and designated by Anheuser-Busch, then Anheuser-Busch shall ensure that the selling Wholesaler receives the same price, net of taxes, Wholesaler would have received from the disapproved purchaser.
 

 ¶20. We observe, first, that the contract distinguishes between "disapproval" of a transfer, which is outlined in Paragraph 4(b), and "assignment," which is found later, in Paragraph 4(d). The same-price provision is found in Paragraph 4(b) (disapproval), and it expressly applies only "if [Anheuser-Busch] disapproves a proposed owner." The match-and-redirect paragraph, Paragraph 4(d), actually specifies
 its own way for the price to be determined: "at the price and on the terms and conditions applicable to such proposed [transfer] ...." Paragraph 4(d) omits the same-price language. Rex does not allege that Anheuser-Busch breached the contract by failing to ensure the price as specified in Paragraph 4(d).
 

 ¶21. Even if it did apply to the transfer here, Paragraph 4(b)(v) conditions the "same price" language on Anheuser-Busch's disapproving the proposed transferee "
 
 solely
 
 because of (A) concern with the resulting Territory configuration or (B) market combinations to achieve economies of scale or enhanced sales opportunities." (Emphasis added.) This is inconsistent with Rex's theory of the case, which was that Anheuser-Busch exercised the assignment provision with the intent of punishing Rex and rewarding Mitchell. Anheuser-Busch is permitted to plead alternative and inconsistent theories, but no allegation is made in the complaint that Anheuser-Busch acted solely for either of the reasons required by the same-price provision.
 

 ¶22. Rex also suggests a breach-of-contract claim may have arisen because an officer of Anheuser-Busch promised Rex it would receive the same consideration in the sale to Mitchell as it would have in the sale to Adams. But the breach-of-contract claim as articulated in the complaint alleges that the written contract between Anheuser-Busch and Rex governs, not the later communications. Rex's brief on appeal likewise never argued the representations were binding. Thus, we conclude that the question of whether the later representations were binding is not before us.
 

 ¶23. In summary, Rex relies on the same-price language in Paragraph 4(b)(v). That provision, by its own terms, is not applicable to the transfer that occurred here. We affirm the dismissal of the breach-of-contract claim.
 

 3. Other Claims Against Anheuser-Busch
 

 ¶24. Rex also alleges, in a cursory fashion, that the circuit court erred in dismissing its other claims against Anheuser-Busch. No authority is cited, and the argument is directed entirely to refuting the reasons the trial court gave for granting the motion to dismiss. That is insufficient to demonstrate reversible error. On appeal from a dismissal for failure to state a claim upon which relief can be granted, the appellant must show that it stated a claim, not merely refute the reasons the trial court gave for dismissing the claim.
 
 See
 

 Satterfield v. State
 
 ,
 
 158 So.3d 380
 
 , 382 (Miss. Ct. App. 2015). At any rate, these claims are not properly before this Court because "[f]ailure to cite legal authority in support of an issue is a procedural bar on appeal."
 
 Webb v. DeSoto Cty.
 
 ,
 
 843 So.2d 682
 
 , 685 (Miss. 2003) (citing
 
 McClain v. State
 
 ,
 
 625 So.2d 774
 
 , 781 (Miss. 1993) ).
 

 4. Tortious Interference-Mitchell
 

 ¶25. Next, we address Rex's claim that Mitchell's alleged collaboration with Anheuser-Busch gave rise to a claim of tortious interference with Rex's contract to sell its business to Adams. Under Mississippi law, the elements of tortious interference with contract are:
 

 1. that the acts were intentional and willful;
 

 2. that they were calculated to cause damage to the plaintiffs in their lawful business;
 

 3. that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and
 

 4. that actual damage and loss resulted.
 

 Cenac v. Murry
 
 ,
 
 609 So.2d 1257
 
 , 1268-69 (Miss. 1992) (quoting
 
 Liston v. Home Ins. Co.
 
 ,
 
 659 F.Supp. 276
 
 , 281 (S.D. Miss. 1986) ). "An action for interference with the contract ordinarily lies when 'a party maliciously interferes with a valid and enforceable contract[,] causing one party not to perform and resulting in injury to the other contracting party.' "
 
 Nichols v. Tri-State Brick & Tile Co.
 
 ,
 
 608 So.2d 324
 
 , 328 (Miss. 1992) (quoting
 
 Mid-Continent Tel. Corp. v. Home Tel. Co.
 
 ,
 
 319 F.Supp. 1176
 
 , 1199 (N.D. Miss. 1970) ).
 

 ¶26. The typical tortious-interference case involves actions by the defendant to induce some third party to break a contract with the plaintiff.
 
 See, e.g.
 
 ,
 
 Cenac
 
 ,
 
 609 So.2d at 1268
 
 . In this case the claim is essentially that Anheuser-Busch induced
 
 Rex
 
 to break the contract through the threat of legal action. It is a peculiar inversion of the typical tortious-interference case, but the tort encompasses more than just the typical case-the elements do specify exactly how the interference must occur.
 
 See
 

 id.
 

 at 1268-69 ;
 
 see also
 
 W. Page Keeton et al.,
 
 Prosser and Keeton on the Law of Torts
 
 § 129 (5th ed. 1984) (noting that tortious interference can be found when a wrong is committed against the plaintiff instead of the plaintiff's contracting partner). "[I]n many cases interference with contract is not so much a theory of liability in itself as it is an element of damage resulting from the commission of some other tort ...." Keeton et al.,
 
 supra
 
 , § 129.
 

 ¶27. Mitchell argues it cannot be liable for tortious inference, since
 
 Mitchell
 
 is not alleged to have committed any of the acts that constitute interference. The complaint alleges that "Anheuser-Busch and Mitchell interfered with [the sale to Adams] through an intentional and willful scheme to redirect the sale of Rex's business from Adams to Mitchell," but all of the specific acts of interference are attributed to Anheuser-Busch rather than to Mitchell. Nonetheless, there is an allegation of concerted action-Anheuser-Busch and Mitchell worked together, and Anheuser-Busch could not have done it without Mitchell's participation. Thus, Rex alleged Mitchell was a joint tortfeasor and is liable for Anheuser-Busch's wrongful acts.
 
 See
 

 D & W Jones, Inc. v. Collier
 
 ,
 
 372 So.2d 288
 
 , 292 (Miss. 1979) ("All who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor." (quoting
 
 Hutto v. Kremer
 
 ,
 
 222 Miss. 374
 
 ,
 
 76 So.2d 204
 
 (1954) )).
 

 ¶28. Mitchell goes on to argue that "Rex does not allege that the match and redirect (or purchase and assign) provision contained in Paragraph 4(d) of the Equity Agreement is unlawful or unenforceable due to BIFDA." This claim ignores Rex's arguments throughout the litigation and instead points to a specific word choice in the complaint-the complaint alleged that Anheuser-Busch violated BIFDA when it "refused to accept Rex's sale to Adams." According to Mitchell, this means Rex alleged only that BIFDA was violated by the refusal and not by the assignment to Mitchell. We find the contention meritless, and we further note that when considering a motion to dismiss, the factual allegations in the complaint should be construed "in a manner most favorable to the non-movant."
 
 Tucker v. Hinds Cty.
 
 ,
 
 558 So.2d 869
 
 , 872 (Miss. 1990) (citing
 
 Rathborne v. Rathborne
 
 ,
 
 683 F.2d 914
 
 , 918 (5th Cir. 1982) ).
 

 ¶29. Mitchell next points out that the sale contract to Adams required the consent of Yuengling, which had not yet been given at the time Anheuser-Busch made the demand for the assignment to Mitchell. According to Mitchell, there can be no
 cause of action for tortious interference with a contract when performance depends on a condition precedent. Mitchell offers no authority on this point, and our own review suggests the prevailing view is the opposite, as long as the plaintiff can prove the condition precedent would have occurred.
 
 See
 

 SCEcorp v. Superior Court
 
 ,
 
 3 Cal.App.4th 673
 
 ,
 
 4 Cal.Rptr.2d 372
 
 , 375-78 (1992) (surveying authorities). That allegation was made expressly in the complaint.
 

 ¶30. Next, Mitchell argues there is no allegation it acted with specific animus toward Rex. But the "malice" required for tortious inference with contract is a term of art, and under Mississippi law, it can be inferred from certain acts:
 

 The element of willfulness and calculation does not require a showing on the part of the plaintiff that defendant had a specific intent to deprive plaintiff of contractual rights. Rather, the requisite intent is inferred when defendant knows of the existence of a contract and does a wrongful act without legal or social justification that he is certain or substantially certain will result in interference with the contract.
 

 Par Indus., Inc.
 
 ,
 
 708 So.2d at 48
 
 (emphasis omitted) (quoting
 
 Liston
 
 ,
 
 659 F.Supp. at
 
 281 ).
 

 ¶31. Mitchell then contends in a cursory fashion that it cannot be found to have committed tortious interference because it had a "justifiable interest and reason for acting" or was "exercising a legitimate interest or right." The assertion is essentially that as long as it was to Mitchell's financial advantage to do what it did, its actions could not be tortious interference. That is simply not the rule, as
 
 Prosser and Keeton on the Law of Torts
 
 has explained,
 

 The defendant is also permitted to interfere with another's contractual relations to protect his own present existing economic interests, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded. He is not free, under this rule, to induce a contract breach merely to obtain customers or other prospective advantage ....
 

 W. Page Keeton et al.,
 
 Prosser and Keeton on the Law of Torts
 
 § 129 (5th ed. 1984) (footnotes omitted). Mitchell had no present existing interest in Rex's business and thus cannot claim the protection of this rule.
 

 ¶32. Finally, Mitchell contends the tortious interference claim should be dismissed because Rex failed to plead that it proximately caused Rex's damages. But Rex certainly makes that allegation in the complaint: "But for [Anheuser-Busch] and Mitchell's interference, Rex would have consummated its sale to Adams and received the full $ 50.5 million purchase price. [Anheuser-Busch] and Mitchell's interference is the proximate cause of Rex's $ 3.1 million loss." Mitchell then contends Rex cannot show proximate cause because it went through with selling its business to Mitchell. This contention is unsupported by authority or argument in Mitchell's brief on appeal. "It is the duty of the briefing party to cite to authority which supports its argument."
 
 Hatfield v. Deer Haven Homeowners Assoc., Inc.
 
 ,
 
 234 So.3d 1269
 
 , 1273 (Miss. 2017) (internal quotation marks omitted) (quoting
 
 Russell v. Real Prop. Servs., LLC v. State
 
 ,
 
 200 So.3d 426
 
 , 430 (Miss. 2016) ). Failure to cite authority waives the issue on appeal.
 
 See
 
 id.
 

 Mitchell also claims Rex cannot show proximate cause because Yuengling is entirely to blame for the damages, but, again, this assertion is unsupported by argument or authority.
 

 ¶33. We conclude that the trial court erred in dismissing Rex's claim against
 Mitchell for tortious interference with contract.
 

 5. Civil Conspiracy-Mitchell
 

 ¶34. Finally, Rex contends the trial court erred in dismissing its claim that Mitchell is liable for Anheuser-Busch's acts under a theory of civil conspiracy. Under Mississippi law, the elements of a civil conspiracy are: "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result."
 
 Bradley v. Kelley Bros. Contractors
 
 ,
 
 117 So.3d 331
 
 , 339 (Miss. Ct. App. 2013) (quoting
 
 Gallagher Bassett Servs. v. Jeffcoat
 
 ,
 
 887 So.2d 777
 
 , 786 (Miss. 2004) ). The elements "are quite similar to those required of a criminal conspiracy, with the distinguishing factor being that 'an agreement is the essence of a criminal conspiracy,' while 'damages are the essence of a civil conspiracy.' "
 

 Id.
 

 (quoting 15A C.J.S.
 
 Conspiracy
 
 § 7 (2012) ).
 

 ¶35. First, Mitchell contends there was no underlying tort and therefore no civil conspiracy. But there is an underlying wrong-Anheuser-Busch's alleged violation of the statute prohibiting it from interfering with transfers of Rex's business, the Beer Industry Fair Dealing Act (BIFDA), as we explained above. Mitchell is alleged to have agreed to and participated in Anheuser-Busch's course of action, before and after Anheuser-Busch formally demanded that Rex sell to Mitchell instead of Adams.
 

 ¶36. Mitchell also erroneously contends that its liability for civil conspiracy depends on
 
 Mitchell's
 
 having committed an overt act that damaged Rex. This is a fundamental misstatement of the nature of civil conspiracy-it exists as a cause of action to hold nonacting parties responsible. Rex has to show an unlawful overt act and it has to show damages, but the overt act need not be by Mitchell.
 
 See
 

 Jeffcoat
 
 ,
 
 887 So.2d at 786
 
 . As explained in
 
 Jeffcoat
 
 ,
 

 Under Mississippi law, "[a] conspiracy is a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully."
 
 Levens v. Campbell
 
 ,
 
 733 So.2d 753
 
 , 761 (Miss. 1999). Where a civil conspiracy gives rise to damages, a right of recovery may arise.
 
 Roussel v. Hutton
 
 ,
 
 638 So.2d 1305
 
 , 1315 (Miss. 1994). It is elementary that a conspiracy requires an agreement between the co-conspirators.
 
 See
 

 Brown v. State
 
 ,
 
 796 So.2d 223
 
 , 226-27 (Miss. 2001) (conspiracy is "a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy," and the "persons must agree ... in order for a conspiracy to exist").
 

 Jeffcoat
 
 ,
 
 887 So.2d at 786
 
 .
 

 ¶37. Because we have held that Rex stated a claim when it alleged Anheuser-Busch violated BIFDA, we also reverse the dismissal of Rex's civil-conspiracy claim against Mitchell.
 

 CONCLUSION
 

 ¶38. The trial court erred in dismissing Rex's Beer Industry Fair Dealing Act (BIFDA) claim against Anheuser-Busch, as well as its claims of tortious interference with a contract and civil conspiracy against Mitchell. The judgment is reversed on those counts, and the case is remanded for further proceedings consistent with this opinion. Otherwise, the judgment is affirmed.
 

 ¶39.
 
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.
 

 Rex alleged that Mitchell had accepted Anheuser-Busch's request not to sell Yuengling in Mississippi in exchange for help in another market.
 

 States with analogues to section 67-7-13(2) include: Louisiana (
 
 La. Stat. Ann. § 26:806
 
 ), Alabama (
 
 Ala. Code § 28-9-7
 
 (2) ), Idaho (
 
 Idaho Code § 23-1104
 
 ), Iowa (Iowa Code § 123A.6 ), and Nebraska (
 
 Neb. Rev. Stat. § 53-219
 
 ).
 

 BIFDA defines a designated member as
 

 the spouse, child, grandchild, parent, brother or sister of a deceased individual who owned an interest, including a controlling interest, in a wholesaler, or any person who inherits under the deceased individual's will, or under the laws of intestate succession of this state; or any person who or entity which has otherwise, through a valid testamentary device by the deceased individual, succeeded the deceased individual in the wholesaler's business, or has succeeded to the deceased individual's ownership interest in the wholesaler pursuant to a written contract or instrument which has been previously approved by supplier; "designated member" includes the appointed and qualified personal representative and the testamentary trustee of a deceased individual owning an ownership interest in a wholesaler, and it includes the person appointed by a court as the guardian or conservator of the property of an incapacitated individual owning an ownership interest in a wholesaler.
 

 Miss. Code Ann. § 67-7-5
 
 (e) (Rev. 2012).